O'BRIEN
v.
HEENEY.

---

O'BRIEN and Wife v. HEENEY, surviving executor of Reed, deceased.

Where executors have accounted under an enrolled decree in a prior suit, the same is con-clusive against them so far as it adjudicates upon the rights of complainants in an after-suit instituted by them and founded upon such decree.

Although personal property is acquired by a testator after the making of his will, yet it passes under it, provided words sufficiently comprehensive are used or the context shows he did not intend to die intestate as to any part.

Where it is clear, from the intention of the testator, that the word *or* is used instead of *and*, and *e converso*, the court interposes to change the word.

Where the court has to determine whether, under a will, B. and M. take estates in fee or for life with remainders and also whether their children take remainders for life or in fee (out of the same property): it will be necessary to bring both B. and M's. children and their representatives before the court as parties.

If it is perceived after a full hearing that an effectual decree cannot be made, the cause can be ordered to stand over to add parties.

---

*January* 27,
1834.

*Decree.*
*Will.*
*Parties.*

THE Bill of Complaint in this cause was filed for an ac-count of the Personal Estate and of the rents and profits of the Real Estate of Matthew Reed, deceased, devised by his last will and testament.

The Bill had been taken as confessed and two successive orders of Reference were made in this cause.

Matthew Reed, the testator, died in the city of New-York in the month of November one thousand eight hundred and eleven. Harriott, the wife of the testator named in his

will, also died before her husband. Matthew Reed, the son of the testator also named in the said will, survived the testator, but died sometime in the year one thousand eight hundred and fifteen or one thousand eight hundred and sixteen, unmarried and without issue.

The testator, Matthew Reed, at the time of his death, left neither father nor mother, and his only next of kin then living were his two sisters named in his will, Bridget O'Brien and Mary Matthews, who then resided in Ireland, natives of that country, and neither of whom were at any time in the United States. Bridget, one of the sisters of the testator, had several children at the time of making the will and at the death of the testator and of Matthew Reed the son, the names and number of whom were unknown. Mary Matthews, the other sister of the testator, had the following children to wit: Michael, Ann, James, Cornelius, John, Patrick, Matthew, Bernard and Bridget, at the time of making the said will and at the death of the testator and Matthew Reed, the son. The said Mary Matthews died in Ireland in the month of January one thousand eight hundred and twenty-eight, leaving, by her will, bearing date the eleventh day of that month, (among other things) to her children Bernard and Bridget Matthews an equal share of whatever sum or sums of money might be arising out of the estate of her late brother the said Matthew Reed, and that might thereafter be sent for her by the executors of the said Matthew Reed; and by her said will bequeathed to her said sons, the said Michael, James, John, Cornelius, Patrick and Matthew and her daughter Ann Flynn, each one shilling; and appointed the Reverend Charles S. Boyle and her son Bernard Matthews to be executors. The house and lot of land designated in the will of the said Matthew Reed deceased, by the No. 323 Pearl Street, had not been sold by the executors of his will or otherwise disposed of. The rents of the said premises were collected by them after the death of the testator and were accounted for by them to the said Bridget O'Brien and Mary Matthews, the two sisters of the said Matthew Reed deceased, during the life-time of the said Mary Matthews; and since the death of Andrew Morris and Charles M'Carthy, two of the executors of the said Matthew Reed, and the survivor-

ship of the defendant Cornelius Heeney, the rents of the said premises had been received by him. The testator, at the time of his death, was possessed of divers stock in the State of New York and New Jersey, among which were one hundred shares of the capital stock of the Mechanics' Bank of the City of New York, on which the dividends or interest had accumulated since that time until the payment of the last dividend previous to the twenty-ninth day of June, one thousand eight hundred and thirty-three, when such accumulated interest, amounting to the sum of three thousand seven hundred and fifty dollars, was received by the said defendant as such surviving executor. The said Mechanics' Bank was incorporated on the twenty-third day of March in the year one thousand eight hundred and ten, and went into operation sometime during the year; and the said stock was acquired by the said Matthew Reed, deceased, by his original subscription as a stock-holder. John Matthews, one of the children of Mary Matthews, was naturalized in the year one thousand eight hundred and twenty ——, and remained in the city of New York.

An action was instituted in ejectment by John Matthews, in February one thousand eight hundred and twenty-nine, in the Supreme Court of the City of New York; and one thirtieth of the premies in question was recovered by him after argument before the judges of that court, and since which time he had received the rent of the premises.

The said Harriott, the wife of the testator, died in his lifetime, but was not the mother of the said Matthew, the son of the testator, who was an illegitimate child.

Several questions upon the will now came before the court; and they may be found referred to in the latter part of the Vice-Chancellor's opinion. But a bill against the executors, including the present defendant, had theretofore been filed, and a decree of the court was made thereunder on the twenty-ninth day of November one thousand eight hundred and twenty-two, enrolled on the ninth day of June one thousand eight hundred and twenty-three, and which established the right in the share and interest now claimed by Bridget O'Brien. That was a bill filed by Mary Matthews, the sister of Bridget and the testator, as one of the residuary legatees named in the

will, for an account. It claimed, for her share, one-third of the clear personal estate and one-third of the rents and profits of the house and lot No. 323 Pearl street, from the time of the death of Matthew Reed the son, to whom the house and lot were devised for life—upon the allegation of his having died without being married or without leaving issue ; and the bill prayed, among other things, that the house and lot might be sold and the proceeds divided between the complainant therein and her sister Bridget O'Brien—she, the complainant, taking a third. Both the answer of the present defendant, Heeney, and of his then co-executor, Andrew Morris, to the said bill expressly admitted her right and they submitted to account for the property of the estate as far as it had come to their hands. No objection had been raised to the taking of the accounts generally. But neither Bridget O'Brien nor any other persons interested as residuary legatees or devisees were parties and, therefore, could not be bound by the decree. An order of reference had been made ; the accounts were investigated and stated by a master ; an elaborate report was made upon the principle that Mary Matthews was entitled as a residuary legatee to one-third of the nett estate and that Bridget O'Brien was entitled, as the other legatee, to the remaining two-thirds ; and certain balances found to be due from the executors respectively or ascertained to be in their hands were, by the master's report, apportioned between the two sisters as such legatees. No exceptions were taken to the report. Upon its confirmation, the decree was made directing the balances in the hands of the executors to be paid over to Mary Matthews and Bridget O'Brien or to their solicitors or attornies in the proportions to which they were respectively entitled as before mentioned, and that certain stocks belonging to the estate remaining unsold should forthwith be sold by the executors and the outstanding debts collected by them, as far as the same could be done, and the avails be then paid over in the same proportion, namely, one-third to Mary Matthews and two-thirds to Bridget O'Brien or to their respective solictors or attornies. The decree then directed that the two executors, Morris and Heeney, should, when required by either of such legatees, sell and dispose of the real estate, including the house and lot No.

1834.

O'BRIEN
v.
KEENEY.

323 Pearl Street, and divide and pay over the proceeds in the proportions before mentioned; and that until such sale they should receive and pay over the rents in like manner, commencing, as to the house and lot in Pearl Street, with and including the quarter's rent due on the first day of November, one thousand eight hundred and twenty-two—the previous rents having been brought into the account.

Mr. *A. L. Robertson,* for the defendant.

Mr. *H. Maxwell* and Mr. *H. S. Mackay,* for the complainants.

*October 6th.*    THE VICE-CHANCELLOR :—Although Bridget O'Brien was not nominally a party to the suit and, therefore, would not be bound by the decree if she should set up claims at variance with or adverse to it, yet, as she might have come in under the decree and claimed the benefit of it if she had chosen to do so or have filed a bill to enforce it or to establish rights similar to those admitted and declared by the decree, the latter must be considered binding and as evidence conclusive upon the executors and each of them, so far as it adjudicates upon the rights of the complainants or settles the principles upon which those rights are founded: *Borough* v. *Whichote,* 3. Bro. P. C. 595.; and see *Shepherd* v. *Towgood,* 1. Turn. & Russ. 379.

If the defendant wished to avoid the binding effect of the decree, he should have proceeded to impeach it for error or mistake, by showing sufficient cause for opening the enrolment or for reversing it : but in a suit founded upon the decree or in a collateral proceeding where the decree is admissible evidence, the defendant is not at liberty to question its correctness.

In the present case, the bill is not founded upon the decree, with a view of enforcing the performance of the matters already decreed against the defendant as an executor : but the object of the bill is to establish a right to two-thirds of the estate both real and personal and for an account ; and the former proceedings and decree upon the bill of Mary Matthews are given in evidence to show that a right to this extent exists.

As the case now stands, the former decree is evidence of such right; and it settles the question, as against the executors, in respect to what passed by the will, also what they were liable to account for to Mary Matthews and Bridget O'Brien, as residuary legatees, and the share and interest of Bridget as well as of Mary in the estate since she now claims upon the same grounds and under a similar construction of the will which was then set up and admitted to be correct. A different decree now upon these points would be inconsistent with the former and, therefore, cannot be made.

The master's report in the present case to which exceptions are taken is in conformity with the principles contained in the former decree; and for the reasons already given, I should think the defendant is not at liberty to controvert it. But viewing the questions presented by the exceptions upon their own merits, independently of the former decree, and I am satisfied the master has decided correctly so far as I shall now undertake to examine his report.

The first exception to it is, that as to certain portions of the personal estate, to wit, the stock of public incorporated companies and plate, there was an intestacy—no person being entitled to them under the will, and, consequently, the executors became possessed thereof in trust for the next of kin. Among some of the stock (some of which the executors disposed of and accounted for in the suit of Mary Matthews) the testator owned one hundred shares in the capital stock of the Mechanics' Bank, and of which the executors at that time were ignorant; but having since discovered it, Mr. Heeney, as surviving executor, has received the dividends which had been accumulating for many years—amounting to upwards of three thousand dollars. These shares the testator subscribed for on the incorporation of the bank in the year one thousand eight hundred and ten and after he had made his will. But the objection is, not that the stock did not pass by the will on account of its being subsequently acquired property:—such an objection cannot be taken in regard to personalty. A will speaks from the time of the testator's decease; and whatever property of a personal nature he then owns passes under it: provided words are used suf-

ficiently comprehensive to include all within the bequests or the context of the will shows that the testator intended to dispose of the whole of his personal estate and not to die intestate as to any part.

It is true, in disposing of the residuary personal estate, that there is no direct devise or bequest of plate or bank stock or of money invested in stocks or funds of any kind and probably for the reason that at the time the will was written the testator held no property of this description other than what he specifically bequeathed. But, taking the whole of the will together and it is evident, from the manner in which the property is disposed of and the way in which it is to be divided, after satisfying the specific bequests and the pecuniary legacies, that the testator did not intend to leave any thing undisposed of by his will; and the court is warranted in adopting the construction which the executors, acting under the advice of their counsel on the former occasion certainly adopted, that the whole of the testator's personal property passed to them or to the legatees pursuant to and under the authority of the will and that they took no part of the property in trust for the next of kin . I am in favor of overruling the first exception.

The second and third exceptions are intended to present the question, whether the children of Bridget O'Brien and those of Mary Matthews are not tenants in common with their respective parents in the rents and profits of the house and lot No. 323. Pearl Street since the death of Matthew Reed the son and to whom it was devised for life.

The testator says, in the event (and it has happened) of the son's death without issue to take the remainder, " then the rents of said house to go to my two sisters in Ireland, viz. Bridget O'Brien and Mary Matthews or to their children, that is to say, one-third to my said sister Mary or to her said children, and two-thirds to my said sister Bridget or to her children." In order to make the chidren take at the same time with the parent under this devise, the word " or" must be read and: for, as the will is worded, it indicates that the children are to take substitutionally and not simultaneously with them ; and in order to give the devise the latter meaning, the phrase must be changed from the disjunctive to the

conjunctive. This is sometimes done where the whole sentence in a will would be otherwise uncertain or unintelligible and it is evident *or* is used for *and*, and *vice versa* through mistake; and upon the principle of correcting the mistake and of effectuating the intention and giving validity to the bequest, the court interposes to change the word: still, unless it is clearly authorized by the intention and meaning of the testator, as collected from the whole will, no alteration will be made: 2 Roper on Leg. 290.

In the case of the will under consideration, I am satisfied no alteration or change is called for. As the words stand, they are susceptible of a fair legal construction and this without adopting the conclusion that the testator meant the children to take during the lifetime of their mothers and in common with them; and there is nothing in the will to show that such was his meaning. Indeed, on the contrary, the obvious intent is that they were not to take at the same time and in common with them.

I am of opinion the master has decided correctly when he reports that Bridget O'Brien is entitled to two thirds of the rents and profits of the house No. 323, Pearl Street and that her children are not entitled to participate in the same with her as tenants in common or otherwise under the will. And so with respect to Mary Matthews and her children, in relation to the remaining one third : that during her life her children were not entitled to share with her as tenants in common or otherwise under the will. Upon this basis it is that the accounts of the rents were taken in the former cause— excluding the children from any share or participation with their mothers. The apportionment between them as the persons solely entitled, was decreed. Altho' I have chosen to examine this question, yet I consider the defendant precluded from raising it in the present suit. The second and third exceptions, so far as they go to the point, should be disallowed.

But there are other questions which cannot be passed over. Thus, taking those words of the will as we find them : "or to their children" and it becomes a question whether they operate as words of limitation and give to the first takers, Bridget O'Brien and Mary Matthews, estates in fee or mere life estates, with remainders to children either for life or in

fee? *vide Montagu* v. *Nucella,* 1 Russ. 165. The master considered the will as having converted the real estate into personalty and that the rents and the proceeds of the house and lot when sold under the power and trusts of the will were to be disposed of as personal estate and also that Bridget O'Brien and Mary Matthews became entitled absolutely to their respective shares; and as a consequence of this, upon the death of Mary Matthews, one third of the rents, until the house and lot should be sold and one third of the money to arise from the sale when made, would be at her disposal and pass by the will made in Ireland in favor of some of her children to the exclusion of others of them, and her executors be entitled to receive the one third of the rents and of the avails of the house and lot when sold. It appears, however, that John Matthews, one of her sons, who is excluded by her will, having become a naturalized citizen, has, since the death of his mother, recovered, in an action of ejectment, commenced in the Superior Court of the city of New York, an undivided thirtieth part of the house and lot—claiming title, as I infer, under the will of his uncle Matthew Reed, as one of the devisees in remainder and has been in the possession and receipt of such a proportion of the rents and profits.

Here, then, it is obvious that the questions to which I have just adverted cannot be settled by a decree in the present state of this suit. All persons having or claiming any interest should first be made parties: John Matthews, for instance, is a necessary party; while the other children of Mary Matthews and her personal representatives should be brought in before an effectual decree can be made touching the account and disposition of one third of the rents since the death of Mary Matthews and the sale of the house and lot and the division of this portion of the proceeds. With respect to Bridget O'Brien, there would be no difficulty, even at present, in ordering the defendant, as surviving executor, to account to her during her life for two thirds of the rents: but beyond this, no safe decree can be made—for, claims may be set up by some of her children after her death similar to those asserted by John Matthews; and it is, therefore, important to have all proper parties before the court when a decision is had upon the questions now presented and I cannot but think the children of Bridget O'Brien are of the number.

The decree in the former cause of Mary Matthews was an imperfect one, for the want of parties— as is manifest from what has since taken place: and to undertake, in the present suit, to determine questions in which persons not before the court are concerned would be another nugatory act. It is surprising that in neither case has the objection been taken by the defendants. Still, where it is perceived, even after a full hearing, that an effectual decree cannot be made, the court may take it upon itself to order the cause to stand over for want of parties: *Jones v. Jones*, 3 *Atk.* 111.

*HARRISON v. M'MENNOMY.*

If the complainant is content to have a decree for an account of two thirds of the personal estate which has come to the hands of the defendant, and not heretofore accounted for, and for two thirds of the rents of the house, No. 323, Pearl Street; (and which, I think she is, at all events, entitled to receive, so long, during her life, as the property remains unsold,) the cause may be sent back to the master simply to take such an account. If more be asked, it must stand over to add parties.