## WILL OF SCHOLL.

*September 23 — October 11, 1898.*

*Wills: Construction: Who are included in term "children:" Descendants: Illegitimates.*

1. The word "children" in a will may be construed to include grandchildren, stepchildren, illegitimate children, or descendants, however remote, where there are no immediate children to whom the term can apply, or where it is manifest from other words in the will that it was used in the broad sense of issue or descendants.

2. A will divided the property of the testatrix into twelve equal parts, giving one part to each of her five brothers and sisters then living and one to the children of each of her seven brothers and sisters then dead. It provided in effect that if either of the brothers or sisters then living should die during her lifetime, leaving lawful issue, his or her share should be divided among his or her children, and in case of such death without issue the share should be equally divided among the surviving brothers or sisters; the surviving child or children of either of the brothers or sisters to represent the share that party would receive had they survived the testatrix. It then directed that "the money which *by the foregoing distribution* would go" to a *grandson* of one of the deceased brothers should be paid to his father in trust for him. *Held*, that the term "children," as used, included descendants in the direct lines from the brothers and sisters, it being the intention of the testatrix that each of the shares bequeathed to the children of deceased brothers and sisters should go in the line of descent till it reached a resting place, however remote, on a basis of absolute equality between members of each class, the children of a deceased member of one class forming a new class to take *per stirpes* the share of such deceased member.

3. Although our statute (sec. 2274, R. S. 1878) provides that an illegitimate child shall take as heir of its mother, the same in all respects as a lawful child, some reasonable evidence that such was the testator's intention is still necessary in order to warrant a court in holding that the term "children," as used in a will, includes illegitimates.

APPEAL from a judgment of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Affirmed in part; reversed in part.*

Appeal from a judgment of the circuit court for Milwaukee county, construing the will of Hannah Scholl, who died testate, leaving, surviving her, two brothers and three sisters, besides children and grandchildren of seven deceased brothers and sisters. The provisions of her will in regard to the distribution of the residue of her estate left after payment of her debts, expenses of her last sickness, and some specific bequests, constitute the portion called in question. They are in the following words:

"One full, equal twelfth part thereof, I give and bequeath to each of my brothers and sisters, namely: William Dellicker, *Henry B. Dellicker*, Lucy Fischer, Sophia Mock and *Rebecca Weiant* (formerly Schwartz), and one twelfth to the children of each of my deceased brothers and sisters, namely: Fred. Dellicker, George Dellicker, Samuel Dellicker, Sarah Yerger, Catherine Wittman, Susan Shaner and Polly Romig, share and share alike; but in case of the decease of either of my said brothers or sisters, leaving lawful issue, then in such case, I give and bequeath his or her share to be equally divided among his or her children, share and share alike. And in the event of the decease of either of my said brothers or sisters, without leaving lawful issue, then in such case I give and bequeath the said part or share that would otherwise go to that brother or sister, or to his or her children, to be equally divided among my surviving brothers and sisters. The surviving child or children of either of the brothers or sisters named to represent the share that party would receive had they survived me."

"I will and direct that the money which, by the foregoing distribution would go to *Theopolis Frick*, grandson of Fred. Dellicker, deceased, shall be paid to his father, Jacob Frick, in trust for and to be applied for the support and maintenance of said *Theopolis Frick*."

"Having paid to Sophia Mock, *Rebecca Weiant* (formerly Schwartz), William Dellicker and *Henry B. Dellicker*, each

the sum of five hundred dollars, and to my sister Lucy Fischer, the sum of one thousand dollars, I direct that in the final settlement of my estate the said sums so paid to each be deducted from their respective shares, and that in said distribution Sallie Hoffman, daughter of Mrs. Sophia Mock, shall have one thousand dollars more than her sister Mary Leister, and in case said Sallie Hoffman does not survive her mother (Sophia Mock), then the amount to be paid to her, Sallie Hoffman, shall be paid to her son, Harry Hoffman."

*James Ward* was an illegitimate son of a deceased grandchild of the Catherine Wittman mentioned in the will. The circuit court, reversing the probate court, decided that surviving descendants of deceased brothers and sisters of the testatrix in the direct line, however remote, were entitled to take distributive shares *per stirpes* under the will, and that *James Ward* was entitled to take notwithstanding his illegitimacy. Under that construction children of deceased parents down to the fifth degree were included in the distribution of property under the will. The executor appealed.

For the appellant the cause was submitted on the brief of *A. G. Weissert.* He contended, *inter alia,* that by the terms of the will the legacies were limited to the brothers and sisters of the testatrix, or to their *children* in the event of the parents not surviving. It was clearly the intention of the testatrix to extend the benefactions to the nephews and nieces only to the extent named, to wit, to the first and second generations. The words employed are "child" and "children," and whenever those words are used they convey the ordinary meaning of those terms, and neither in their vulgar or legal sense are they expressive of remote descendants. *Turner v. Ivie,* 5 Heisk. 230; *Booker v. Booker,* 5 Humph. 505; Webst. Dict.; Bouv. Law Dict.; 2 Redf. Wills (1st ed.), 336; *Mowatt v. Carow,* 7 Paige, 339; *Palmer v. Horn,* 84 N. Y. 521; *Magaw v. Field,* 48 id. 668; *Shannon v. Pickell,* 55 Hun, 130. Where there is anything to show

that the testator intended to use it in a different sense, it
will not be held to include illegitimate offspring, stepchil-
dren, children by marriage only, grandchildren, or more re-
mote descendants.  2 Redf. Wills, § 44, subd. 11; *Radcliffe
v. Buckley*, 10 Ves. 195; *Sinton v. Boyd*, 19 Ohio St. 30;
*Orford v. Churchell*, 3 Ves. & B. 59; *Isard v. Isard's Ex'rs*,
2 Desaus. 309; *Shanks v. Mills*, 25 S. C. 358; *Gardner v.
Heyer*, 2 Paige, 11; *Cromer v. Pinckney*, 3 Barb. Ch. 475;
*Hill v. Crook*, 7 Moak's Eng. 1; *Marshall v. Wabash R. Co.*
46 Fed. Rep. 269, 273; *Minot v. Harris*, 132 Mass. 531;
*Barnes v. Greenzebach*, 1 Edw. Ch. 41; *Miller v. Miller*, 79
Hun, 197; *Appel v. Byers*, 98 Pa. St. 479.

For certain sisters of the testatrix and children of her de-
ceased brothers and sisters, there was a brief by *Haring &
Frost*, and oral argument by *C. I. Haring*.  They argued,
among other things, that presumptively "children" is to be
taken in its strict sense.  *Pugh v. Pugh*, 105 Ind. 552; *Pal-
mer v. Horn*, 84 N. Y. 516; *In re Schedel*, 73 Cal. 594; *Os-
good v. Lovering*, 33 Me. 464; *Thompson v. Ludington*, 104
Mass. 193; *Tillinghast v. D'Wolf*, 8 R. I. 69; *Low v. Har-
mony*, 72 N. Y. 408; *Appeal of Gable's Ex'rs*, 40 Pa. St. 231;
*Castner's Appeal*, 88 id. 478; *Feit's Ex'rs v. Vanatta*, 21 N. J.
Eq. 84; *Turner v. Withers*, 23 Md. 18; *Taylor v. Watson*, 35
id. 519; *Willis v. Jenkins*, 30 Ga. 167; *Walker v. William-
son*, 25 id. 549; Jarman, Wills (6th ed.), *1000–*1002; *Cum-
mings v. Plummer*, 94 Ind. 403, 48 Am. Rep. 167; *Presley
v. Davis*, 7 Rich. Eq. 105, 62 Am. Dec. 396; *Cruse v. McKey*,
73 id. 186; 5 Am. & Eng. Ency. of Law (2d ed.), 1085.  In
the following cases the word "children" was held not to
include grandchildren or remoter descendants: *Radcliffe v.
Buckley*, 10 Ves. 195; *Adams v. Law*, 17 How. 417; *Ingra-
ham v. Meade*, 3 Wall. Jr. 32; *McGuire v. Westmoreland*, 36
Ala. 594; *Pugh v. Pugh*, 105 Ind. 552, 555; *Matter of Cha-
poton's Estate*, 104 Mich. 11; *Herr's Estate*, 28 Pa. St. 467;
*Shannon v. Pickell*, 55 Hun, 130; *Shanks v. Mills*, 25 S. C. 358.

*Edward F. Byron,* for certain grandchildren and great-grandchildren of deceased brothers and sisters of the testatrix, contended, *inter alia,* that it was clearly the intent of the testatrix to adopt a scheme by which each of the twelve families represented by her remaining brothers and sisters should have an equal share in her estate. She therefore gave to each of her brothers and sisters who survive her a twelfth interest and directed that a twelfth interest be given to each of the families of her deceased brothers and sisters. It is true she refers to each of these families as "children," but the last item in the eighth clause shows that she did not by the word "children" intend to limit her bequests strictly to "children" in the narrow sense of the term. She makes a distribution in her will and afterwards in a later part refers to it in a way that proves that she regarded it as a matter of course that *Theopolis Frick,* one of the grandchildren, would by that distribution take a share in her estate, and then proceeds to state what shall be done with his share, for personal reasons. This contention on the part of the grandchildren is simply calculated to carry out the intentions of the testatrix, and not in any way to destroy the will or annul any of its provisions. The word "children" has been held to include grandchildren and remoter descendants. See Jarman, Wills (6th ed.), *1000–*1002, *1006, *1087, *1088; *In re Schedel,* 73 Cal. 594; *Bowker v. Bowker,* 148 Mass. 198; *Minot v. Harris,* 132 id. 528; *Houghton v. Kendall,* 7 Allen, 72; *In re Paton,* 111 N. Y. 480; *Hunt's Estate,* 133 Pa. St. 260; *Prowitt v. Rodman,* 37 N. Y. 42; *Meson v. Ammon,* 117 Pa. St. 127; *Haldeman v. Haldeman,* 40 id. 29; *Guthrie's Appeal,* 37 id. 9; *In re Smith, Lord v. Hayward,* 35 Ch. Div. 558; 5 Am. & Eng. Ency. of Law (2d ed.), 1086 *et seq.; Rhoton v. Blevin,* 99 Cal. 645, 649; *Waddell v. Leonard,* 53 Ga. 697; *Matter of Paton,* 41 Hun, 497; *Palmer v. Horn,* 84 N. Y. 516; *In re Eichelberger's Estate,* 5 Pa. St. 266; *Wyth v. Blackman,* 1 Ves. Sr. 196; *Hughes*

*v. Sayer,* 1 P. Wms. 534; *Trash v. Wood,* 4 Mylne & C. 324; *Wylde's Case,* 6 Coke, 17*a; Doe v. Webber,* 1 Barn. & Ald. 713; *Doe v. Cavendish,* 4 Term, 741, note *a; Royle v. Hamilton,* 4 Ves. 437; *Doe v. Perryn,* 3 Term, 484; *Ginger v. White,* Willes, 348; *Hughes v. Hughes,* 12 B. Mon. 121; *Pemberton v. Parke,* 5 Bin. 601, 6 Am. Dec. 432; sec. 2289, Stats. 1898, and note.

MARSHALL, J.  Did the testatrix intend to include children and grandchildren of deceased nephews and nieces in the distribution of her bounty by the use of the words, " I give and bequeath one twelfth to the children of each of my deceased brothers and sisters; " and "in case of the decease of either,   . . .   I bequeath his or her share to be equally divided among his or her children ? "  That is the first question presented for consideration, and it must be solved by applying to the language of the testatrix, in the light of all other provisions of the will and the general scheme manifestly in her mind when she executed it, some well-settled rules for judicial construction, the most important being, that the several parts of the instrument are to be taken together, having regard to their relation to each other; that each and every part must be given effect if possible, and in line with the general scheme of the testator; that words are to be taken in their ordinary rather than some peculiar sense, though the former will yield to the latter when it is clear from the instrument that the latter meaning was intended, or that it is necessary, rather than that any part of the will shall fail; that while the circumstances under which the will was made may be taken into consideration, they cannot be resorted to to vary the meaning which must necessarily be attributed to words, the purpose of construction being not to get meaning into the language of the testator, but to get the testator's meaning out of it; that such meaning when ascertained is to govern, if not contrary to

law or good morals, however strange it may be, or however much the rules of punctuation and the literal meaning of words, or even their arrangement in the writing, may be violated to reach it.

It is obvious that the testatrix intended to bequeath one twelfth of the residue of her property, after payment of her debts, expenses of last sickness, and the specific bequests preceding the general clause of her will, to each branch of her family in the collateral line. How remote she intended to go to reach a taker is the question. That the general scheme was as stated is quite manifest from her dividing the property into twelve equal parts, bequeathing one part to each of her living brothers and sisters, and one to the children of each of those dead, then providing that in case of the death of either of her living brothers and sisters during her lifetime, leaving lawful issue, the share of such brother or sister should be divided among his or her children; and in case of such death without issue, that the share should be equally divided among the surviving brothers and sisters, the surviving child or children of either of the brothers or sisters to represent the share that party would receive. There are many other indications in the will showing the scheme to have been as stated, but those particularly mentioned are sufficient. If we had only the words "to each of my brothers and sisters (naming those living), and to the children of each of my deceased brothers and sisters, share and share alike," and the other instances already mentioned where the word "children" occurs in the will, no question could arise warranting a resort to rules for construction of the instrument to determine the meaning intended by the testatrix. The word "children," when not rendered obscure by the manner of its use, has a plain and well-understood ordinary signification. It means the descendants of human parents in the first degree. That is its lexicographical as well as its ordinary legal meaning. Yet, issue in the direct

line, however remote, may reasonably, in some circumstances, be included within the term, and it may be extended greatly in order to carry out the manifest purpose of a will. It is so laid down by all text writers and supported by a multitude of American and English authorities, a large collection of which are cited to the text on the subject in 2 Jarman, Wills (6th ed.), 156 [*1000].

Many very apt illustrations of the application of this doctrine are cited by respondents. In *In re Schedel*, 73 Cal. 594, the testator left property to each of the children of his deceased sister, to be paid as they respectively reached their majority, with a provision that if either child should die leaving children, before the death of the testator's brother, who was given a beneficiary interest in the estate, such issue should take the parent's share. When the will was drawn the sister and all her children had been dead for many years, but one of the deceased children left a child who was a minor at the date of the will, and it was held that the word " children " must have been used to signify descendants and to include the minor grandchild, as such child was the only person in existence when the words were spoken or who could have been in the mind of the testator. In *Bowker v. Bowker*, 148 Mass. 198, the court said that the word " child " may be so interpreted as to include grandchildren where the will exhibits that such was the manifest intention; and the term was so extended in construing the will there under consideration, in order, as was stated, to carry out " the ruling idea of the testator."

The general doctrine may be stated thus: Where there are no immediate children to whom the term can apply, or where it is manifest from other words in the will that it was used in the broad sense of issue or descendants, it may be construed to include grandchildren, stepchildren, illegitimate children, or descendants, however remote. 2 Redf. Wills,

17; Wigram, Wills, § 21; *Mowatt v. Carow*, 7 Paige, 328, 32 Am. Dec. 41.

Now, in view of the foregoing, the language following the general bequest to children of deceased brothers and sisters seems to have controlling significance, namely: "*I will and direct that the money which, by the foregoing distribution, would go to Theopolis Frick, grandson of Fred. Dellicker, deceased, shall be paid to his father, Jacob Frick, in trust for and to be applied for the support and maintenance of said Theopolis Frick.*" *Theopolis Frick*, it will be observed, was not a child of a deceased brother or sister, but was a grandchild. Therefore, unless the term "children" as previously used "in the foregoing distribution" was intended to include descendants in the direct lines from the brothers and sisters, where necessary in order that the property in that line might reach a class to take under the will, nothing can go to *Theopolis Frick*, and the special clause referring to him must be left without any effect whatever. That seems to be a sufficient reason, under the rules before mentioned, for saying that the testatrix used the term under consideration as synonymous with descendants. The residuary clause provided for twelve equal parts corresponding to the twelve branches of the family, manifesting, as stated, a clear intention that each such branch should have the benefit of one such share, except in the case of the death without issue of one of the then living brothers or sisters, in which case the share going to such deceased brother or sister was to be equally divided between the brothers and sisters remaining. Unless we can say that the shares intended primarily for the respective classes of children of deceased brothers and sisters must go in the lines indicated, to a class that will satisfy the term used to designate the classes, in the mind of the testatrix, then, manifestly, the attempt to provide for *Theopolis Frick* will fail absolutely. There is no reasonable.

theory upon which he can take by reference to "the fore-going distribution" spoken of, except upon the one that all of the class to which he belongs, and all similar classes, were in the mind of the testatrix, and that she intended each of the seven shares bequeathed to the children of deceased brothers and sisters to go in the line of descent till it all reached a resting place, however remote, on a basis of absolute equality between the members of each class, the children of a deceased member of one class forming a new class to take *per stirpes* the share of such deceased member. By such construction of the will each part of it is easily brought into complete harmony with every other part, and otherwise no reasonable theory can be suggested that will produce that effect. That is the view the circuit judge took, in which we concur.

The remaining question is, Did the testatrix intend to include the illegitimate great-grandchild of Catherine Wittman? Here again, if we adopt as the sense in which the word "children" was used the ordinary meaning attributable thereto, the illegitimate must be excluded. The description "child," "son," "issue," and words of that nature, includes legitimates only. *Cartwright v. Vawdry*, 5 Ves. 530, is often quoted as a leading authority on that point. There the testator, having four children of whom one was an illegitimate daughter, remembered them in his will in the following language: "All and every of such child or children as I may happen to leave at my death." The Lord Chancellor said: "How can I possibly put upon the will the construction the plaintiff desires, when there are lawful children? It is impossible in a court of justice to hold that an illegitimate child can take equally with lawful children upon a devise to children." That is authority only to the point that a general bequest to children, without something to clearly give to the term an extended meaning, includes legitimates only. The mere fact of the existence of lawful chil-

dren does not make it impossible for the term to be construed so as to include illegitimates if from other parts of the will it is clear that they were intended to be included in the distribution of the testator's bounty. The same rule that includes grandchildren and great-grandchildren in the term "children" will include illegitimates, adopted children, stepchildren, or any other class to whom the term may reasonably apply. True, our statute, changing the common law in respect to inheritable blood of illegitimates, is entitled to some, but not alone to controlling, weight on the question of intention. Such statute provides that an illegitimate child shall take as heir of its mother, the same in all respects as a lawful child. R. S. 1878, sec. 2274. So if the property were to pass by law to the children of Sallie Yerger, of whom *James Ward* was one, he would take equally with her lawful children.

The rule at common law under which illegitimates were not deemed to have any inheritable blood from their father or mother and could not be given any by the marriage of the parents, finds no place in our system. In its stead the more humane policy of the civil law has been adopted,— a policy which considers justice to the innocent as outweighing the controlling idea, so called, of the common law, the discouragement of illegitimacy. The importance of the latter is by no means diminished in legal contemplation, but the injustice and futility of punishing the innocent result of illicit commerce as an effectual warning against the sin of it, is recognized in the more practical and intelligent system under which we live. That situation, which we may reasonably assume the testatrix had in mind in making the testamentary disposition of her property, is quite persuasive in determining what she intended. In view of it, less evidence than under the old system will sufficiently show that the intention was to include illegitimate children in giving to a class as children, the mother of the class being the in-

heritable blood that induced the bequest; but the existence of the policy referred to cannot do away entirely with the rule that the general term cannot include the particular class unless the intention to do so appears by necessary implication. It was not the policy of the common law alone that led to the rule. So we are not permitted to say that, the policy being changed, the rule has ceased to exist. The plain, ordinary meaning of the word still is, presumptively, legitimate children, but the inference arising from its use, unexplained, is somewhat weakened, so that evidence or circumstances of less weight than before are deemed sufficient to rebut it. The firmness in adhering to the rule, as in *Cartwright v. Vawdry*, 5 Ves. 530, does not now prevail. There, as stated, the bequest was "to every of the children that the testator might leave at his death, share and share alike," coupled with a provision for dividing the beneficial interests under the will into fourths, corresponding to the number of children the testator had, including an illegitimate daughter. Yet, it was said that the circumstance that it took the daughter to satisfy the call for four children was not sufficient to permit the court to so construe the will as to hold that the testator intended to remember her, in view of the fact that he had three lawful children to whom the term "children" would apply. That was an exceedingly harsh rule, and well illustrates the firmness with which courts formerly adhered to the primary meaning of the term. Now, any reasonable evidence that the testator intended to include illegitimates would be sufficient, and where the class, in order to participate, must do so through the mother, less evidence would include illegitimates than if they were reached through the father in the line of descent. Bigelow, Wills, 201. It is said by some text writers that the rule of necessary implication no longer exists. In that they are in error. The rule remains but is satisfied by less evidence.

It follows from what has preceded that there must be some

evidence to supplement the policy of the statute in order to warrant us in saying that the testatrix intended by the term " children " to include the illegitimate son of Sallie Yerger. We fail to find any such evidence. Therefore that part of the judgment of the circuit court, holding that *James Ward* is entitled to take under the will, must be reversed, but in all other respects it must be affirmed, and the cause be remanded for further proceedings in accordance with this opinion. The costs and disbursements of the parties in this and the circuit courts are directed to be paid out of the estate. The county court is directed to make a reasonable allowance out of the estate to each of the parties for counsel fees.

*By the Court.*— So ordered.