Estate of Sander: Sturner and another, Appellants, vs. Weitemeyer and others, Respondents.

*December 18, 1905—January 9, 1906.*

(1) *Appeal from county court: Representative of party aggrieved: Form of notice.* (2–5) *Wills: Construction: Who are "blood relations:" Illegitimates.*

1. A notice of appeal from county court filed in behalf of the parties actually aggrieved and by their duly authorized representative, is not insufficient merely because in form it states that such representative, "being aggrieved . . . hereby appeals," etc.

2. Although, generally speaking, the words "blood relations" in wills mean such persons as take under the statute regarding the distribution of estates of intestates, yet they may be given, by judicial construction, any reasonably different meaning necessary to effectuate the intention of the testator.

3. The words "my nearest blood relations, if there be any," in the will of one who had (and, it is reasonably certain, knew he

had) no relatives of his own blood other than descendants of his illegitimate brother, residing in a foreign country, are *held* to have been used to refer to such descendants.

4. The intention of a testator in regard to illegitimates is to be respected and effectuated by courts the same as his intention respecting lawful issue.

[5. Whether, where illegitimates have been given inheritable blood as to the mother, as in this state (sec. 2274, Stats. 1898), the blood relatives of such a person include his brothers and sisters of the common mother, though they are also illegitimates, and also include their descendants, not determined.]

APPEAL from an order of the circuit court for Dodge county: JAMES J. DICK, Circuit Judge. *Affirmed.*

Frederick Conrad Sander was born February 17, 1814, in Germany, he being the illegitimate son of Caroline Weitemeyer and August Sander. He died at Reeseville, Wisconsin, in the year 1896. He left a last will and testament, as follows:

"I, Frederick Sander of the village of Reeseville, Dodge county, state of Wisconsin, being of sound mind and memory, do make, publish, and declare this my last will and testament—hereby revoking all former wills, bequests, and devises by me made.

"First. It is my will that all my just debts and funeral expenses and all charges be paid out of my personal property.

"Second. I give and bequeath to Christian Reinhard of Reeseville, Dodge county, Wisconsin, as trustee, all of my moneys and property of whatsoever kind, to hold in trust for the benefit and support of my wife, Mary Sander, paying her all the interest and income thereon annually and keeping all the capital invested, no part of the principal to be used.

"Third. I give and bequeath to the Evangelical Lutheran Emmanuel Church of Reeseville, Dodge county, Wisconsin, the sum of six hundred dollars ($600.00), payable on my death.

"Fourth. I give and bequeath all my property, after the death of my said wife Mary Sander, to my nearest blood relations in equal shares.

"Fifth. I do hereby constitute and appoint Christian Reinhard of Reeseville, Dodge county, Wisconsin, executor of this my last will and testament.

"In witness whereof I have hereunto set my hand and seal this 17th day of June, A. D. 1889.

"FREDERICK SANDER. [Seal.]

"Signed, sealed and published and declared by the said Frederick Sander as and for his last will and testament, in the presence of us, who, at his request in his presence and in the presence of each other, have hereunto subscribed our names as attesting witnesses. The words Ferdinand in the first line of this will and in the second line of this attestation being stricken out and the name Frederick being interlined in their stead before signing by said testator.

"Peter Reinhard, Jr.<br>"Edward Wobig.

"Be it remembered that I, Frederick Sander, of the village of Reeseville, county of Dodge, and state of Wisconsin, being of sound mind and memory, do make this codicil to my last will and testament, which said last will being made by me June (17th) seventeenth, A. D. 1896.

"First. It is my will that on the death of my wife, Mary Sander, the sum of one thousand dollars ($1,000.00) be paid to *Albert Loesch* of the village of Reeseville, county of Dodge, and state of Wisconsin, and the sum of two hundred ($200.00) to Fred Sturner of Lowell, Dodge county, Wisconsin, as bequests by me to them made.

"Second. All the rest of my property that remains on the death of my said wife, after satisfying the said bequests, and paying all necessary and legal charges, I give and bequeath to my nearest blood relations, if there be any; but if there be none, I then give and bequeath the same to the said *Albert Loesch* of Reeseville, Dodge county, Wisconsin, and *Mrs. Emily Sturner* of Lowell, Dodge county, state of Wisconsin, in equal parts.

"In witness whereof, I have hereunto set my hand and seal this 1st day of August, A. D. 1896.

"F. SANDER. [Seal.]

"Signed, sealed, published and declared by the said Frederick Sander as and for a codicil to his last will and testament in the presence of us, who at his request, in his presence, and

in the presence of each other have hereunto subscribed our names as attesting witnesses.

"Edward Wobig.
"Peter Reinhard, Jr."

The will was duly admitted to probate in the county court of Dodge county. Thereafter such proceedings were had in such court, in the due administration of the estate under the will, that an order was entered to the effect that descendants of an illegitimate brother of the testator,—represented in such proceedings by Walter Weaver, consul of the German empire, of which such descendants were residents and citizens, and by their authority under a duly executed power of attorney,— were not blood relatives of the deceased as that term was used in the will; that the testator left no other relatives and, there- fore, that *Albert Loesch* and *Emily Sturner* were entitled to the residuum of the estate under the second subdivision of the codicil. Weaver in his own name, but for the benefit of the defeated claimants, appealed to the circuit court from such decision. In such court a motion was made on behalf of *Al- bert Loesch* and *Emily Sturner* for a dismissal of the appeal, first, because the same was not taken by the real parties in in- terest, and second, because the same was not taken in the man- ner and form as required by law. The motion was denied. A hearing was had upon the merits resulting in findings of fact to this effect: The deceased was the illegitimate child of Caroline Weitemeyer, who predeceased him. *Emilie Weite- meyer,* née Voss, *Auguste Weitemeyer, Wilhelm Weitemeyer, Johann Christian Heinrich Weitemeyer, August Christian Fritz Weitemeyer, Christian Conrad August Weitemeyer, Wilhelmine Augusta Schmidt,* née *Weitemeyer,* and *Minna Emilie Weitemeyer* are the legitimate children of an illegiti- mate son of the mother of the deceased. *Albert Loesch* and *Emily Sturner* are not blood relatives of the testator. He had no children and left no other relatives of his own blood than the descendants of his illegitimate brother. He used the term

"blood relatives" in his will with reference to such descendants. On such facts judgment was ordered and rendered reversing the order appealed from, and adjudging the residuum of the estate under the second clause of the codicil to such descendants. *Emily Sturner* and *Albert Loesch* appeal.

*M. L. Lueck,* for the appellants.

*Chr. A. Christiansen,* for the respondents.

MARSHALL, J. The motion to dismiss the appeal was properly denied. True, the statute (sec. 4031, Stats. 1898) governing the matter confines the right of appeal to parties aggrieved, and the manner of asserting it to the filing of a notice of appeal and undertaking with the county court within a specified time. True, also, in this case the form of the notice of appeal is that the authorized representative of the parties in interest "being aggrieved . . . hereby appeals." But it is perfectly apparent that the principals—the ones represented by the person signing the notice—were in fact aggrieved, and that the notice was by their authority filed in their behalf. No form for such a notice is prescribed by statute. Neither the words "being aggrieved" nor any similar words are essential thereto. The fact that they were used in the instance in hand does not militate against the circumstance that the notice was really filed in behalf of the parties actually aggrieved, and by competent authority.

This appeal turns on the meaning of the words "my nearest blood relations," as used in the codicil. True, as contended by counsel for appellant, such words, generally speaking, in wills mean such persons as take under the statute regarding the distribution of estates of intestates. *Cleaver v. Cleaver,* 39 Wis. 96; 2 Jarman, Wills (Bigelow's ed.) *972; 2 Woerner, Administration, *904; *Drew v. Wakefield,* 54 Me. 291; *Gallagher v. Crooks,* 132 N. Y. 338, 30 N. E. 746; *Cummings v. Cummings,* 146 Mass. 501, 16 N. E. 401; *Nye v. Grand Lodge A. O. U. W.* 9 Ind. App. 131, 36 N. E. 429.

But that does not stand in the way of giving to them, by judicial construction, any reasonably different meaning necessary to effectuate the intention of the testator.

It is not claimed by the learned counsel for appellant but what the words in question may be fairly considered open to construction, nor but what the limits of their meaning in the proper sense include relatives who are illegitimate, and those whose relationship must be traced through illegitimacy.

But it is said the fact that the words under discussion were used in the will as it existed at first, in connection with the one that they were repeated in the codicil in connection with "if there be any," indicates that the testator entertained doubt as to whether he had relatives falling within their scope, which is inconsistent with his having in mind illegitimates or their descendants. The argument is without force since he must have known, or had reasonable ground to suppose, that at least he had no relatives other than the descendants of his illegitimate brother and sister, and might have none whatever. He left Germany when his mother was about fifty-three years of age. She had never been married. His illegitimate sister was then thirty-one years and his illegitimate brother eighteen years of age. The former died thirty-six years before the date of the codicil. Had she been then alive she would have been eighty-seven years of age. The latter died nine years before such date. Had he been then alive he would have been seventy-four years of age. The mother died thirty-two years before such date. Had she been then alive she would have been one hundred and eleven years of age. The brother married seven years after the testator left Germany. So far as appears, the latter did not keep informed as to the history of his family after he came here. It was nearly fifty years after the brother's marriage before the codicil was made and fifty-eight years after such marriage before the testator died. It is most likely that when he made the will in 1889 he had good reason to suppose his brother might be liv-

ing, or have children living. During the seven years which elapsed before he made the codicil circumstances may well have occurred creating doubt in his mind in respect to whether he had living relatives, or would have such at the later date when his will would take effect. With the reasonable certainty appearing that when he made the codicil he knew, or ought to have known from the very nature of things, that he had no blood relatives, other than in the most general sense of that term, or in the common-law sense varied by our statute giving inheritable blood to a certain extent to illegitimates, the conclusion is irresistible that he used the words under discussion without any purpose whatever unless he had such relatives in mind in doing so. A construction of language which leads to an absurdity is never to be adopted when one founded in reason appears.

The offense of the parents in the case of an illegitimate offspring under the humane laws of our day is not visited upon the children to the extent of preventing them from taking under a will regardless of the ordinary meaning of the term "blood relatives," or "child," or "heirs," or "next of kin" at common law. The intention of a testator as regards illegitimates is to be respected and effectuated by courts the same as his intention respecting lawful issue. *Will of Scholl,* 100 Wis. 650, 76 N. W. 616. Speaking of the word "child" in that case it was said:

"Where there are no immediate children to whom the term can apply, or where it is manifest from other words in the will that it was used in the broad sense of issue or descendants, it may be construed to include grandchildren, stepchildren, illegitimate children, or descendants, however remote."

In harmony with the foregoing there are many reported cases to the effect that where a testator has no blood relations, except through his mother, her descendants are his blood relatives whether they are illegitimates or the descendants of illegitimates, and such persons are included within the term

"blood relations" when used in a will by necessary implication. *Bennett v. Toler,* 15 Grat. 588; *Elliott v. Elliott,* 117 Ind. 380, 20 N. E. 264; *Gardner v. Heyer,* 2 Paige, Ch. 11; *Howell v. Tyler,* 91 N. C. 207; *Powers v. McEachern,* 7 S. C. 290; *In re Ashton,* 45 Alb. Law J. 335.

There is also much authority to the effect that where illegitimates have been given inheritable blood as to the mother, as in this state, the blood relatives of such a person include his brothers and sisters of the common mother, though they are also illegitimates, and also include their descendants. It is said in 1 Woerner, Administration (2d ed.) *157, that illegitimates "are almost universally allowed to inherit from the mother and through the mother," referring to many states which have statutes on the subject, including this one. See, also, *Bennett v. Toler, supra; Briggs v. Greene,* 10 R. I. 495, 497; *Burlington v. Fosby,* 6 Vt. 83, 88; *Bales v. Elder,* 118 Ill. 436, 11 N. E. 421; *Sutton v. Sutton,* 87 Ky. 216, 8 S. W. 337; *Dickinson's Appeal,* 42 Conn. 491, 504; *Brown v. Dye,* 2 Root, 280; *Rogers v. Weller,* 20 Fed. Cas. 1130, 1131. How this court might hold on that question, were it necessary to decide the same, we need not now suggest. The subject is only referred to as emphasizing the idea that the judicial leaning towards a construction of language which might or might not include illegitimates so as to exclude them in cases like this, which formerly existed and which the learned counsel for appellant invokes, is somewhat obsolete.

*By the Court.*—The order appealed from is affirmed.