(83 Misc. Rep. 250)

## In re FAUST'S ESTATE.

(Surrogate's Court, New York County. December, 1913.)

1. WILLS (§ 439*)—CONSTRUCTION.

A will should be construed according to the testator's manifest intention so as to give effect to the scheme of distribution devised by him, where such construction is not inconsistent with or does not contravene statutes or decisions.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 952, 955, 957; Dec. Dig. § 439.*]

2. WILLS (§ 497*)—CONSTRUCTION—"CHILDREN."

Where testator divides his property into two equal parts, bequeathing one to his relatives and the other to the relatives of his deceased wife and clearly intending to die testate as to all his property, and where the word "children," as used to designate beneficiaries, if interpreted in its primary sense, will cause two legacies to lapse, such word will be construed to include grandchildren to carry out the testator's intention.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1080–1086; Dec. Dig. § 497.*

For other definitions, see Words and Phrases, vol. 2, pp. 1115–1141; vol. 8, p. 7601.]

3. WILLS (§ 524*)—CONSTRUCTION—GIFTS TO A CLASS.

Where a will made a bequest "to children of" a life tenant and fixed the time of final distribution at the death of the life tenant, only those of the class to whom the gifts were made, who were in being at the time of final distribution could share.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1116–1127; Dec. Dig. § 524.*]

4. WILLS (§ 630*)—CONSTRUCTION.

A will providing for payment, after the death of the life tenant, of "one equal part or share to the following of her sisters, if living, or the children of such as shall be dead," fixed the time of distribution as the date of the death of the life tenant and made the gift contingent upon survivorship.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1464–1480, 1486, 1487; Dec. Dig. § 630.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Proceedings upon the judicial settlement of the account of the executor of the estate of George Faust, deceased. Decreed according to opinion.

Joseph H. Hayes, of New York City, for executor.

Norbert Heinsheimer, of New York City, special guardian.

COHALAN, S. The testator died on the 16th day of September, 1895, leaving a last will and testament which was duly admitted to probate on the 29th of February, 1896. In his will he directed his executor to sell a plot of real estate owned by him and known as No. 213 Spring street, New York City, and from the purchase money received to pay the sum of $1,000 to his sister, Maria Anna Zipf, and the sum of $1,000 to Julia Braun, a sister of his deceased wife. The executor was further directed to set aside the sum of $500 to defray the expenses of administration. After paying and discharging any mortgages and loans on the said property and the payment of the two aforementioned legacies, the executor was to take from the purchaser of the property a mortgage for one-half of the balance of the purchase money, payable at the death of Julia Braun, the testator's sister-in-law, with interest at the rate of 5 per cent. per annum, payable semi-annually, which mortgage was to recite the trust and contain a provision that it should not be assigned or transferred during the life of his sister-in-law, and the trustees were directed to pay the income derived therefrom to Julia Braun during her lifetime. The remaining one-half of the purchase money was directed to be divided among his brothers and sisters and children of deceased brothers and sisters, each one receiving one share. All of the property of decedent has been distributed with the exception of the one-half held in trust during the lifetime of Julia Braun. The latter died April 10, 1913, and the executor has, according to the directions contained in the will, collected the mortgage, has filed his account of the moneys received, and the same are now to be distributed pursuant to the 11th paragraph of the will. Several questions arise as to the correct method of distribution. Paragraph 11 provides as follows:

"After the death of my sister-in-law, Julia Braun, I direct my executors or the survivor of them to collect the amount of said bond and mortgage and to divide the same into six equal parts or shares, and to pay one equal part or share to the following of her sisters, if living, or the children of such as shall be dead, to wit: 1. One equal sixth part or share to Barbara Glock. 2. One equal sixth part or share to Elizabeth Strauber. 3. One equal sixth part or share to the children of Mary Huhner, deceased. 4. One equal sixth part or share to the children of Christina Laux, deceased. 5. One equal sixth part or share to the children of Catharina Esselborn. 6. One equal sixth part or share to Agnes Ey."

The first question of construction that presents itself is as to the interpretation of the word "children" with regard to two of the one-sixth shares bequeathed by this paragraph of the will. Barbara Glock, the legatee of the first one-sixth part, died December 12, 1903, after the testator. She had two daughters, Barbara Rohrbach and Mina Pottebaum, both of whom died before the testator and the life tenant. Mina Pottebaum left one daughter, Mary Hubschmitt, who died

without leaving any children; Barbara Rohrbach, the other daughter, left her surviving three daughters and a son, Minnie Ullrich, Louisa Weber, and Julia Muller and William G. Rohrbach, who died last September, so that Barbara Glock left her surviving no children, but only grandchildren, and of the five who survived her four survived the life tenant and one died since. Mary Huhner, whose children, under the third subdivision of the eleventh paragraph of the will, were to receive a one-sixth share, died before the testator, leaving but one son, who died on July 5, 1889, before the testator, leaving three children, Anna H. Westhoff, Dolly Huhner, and Henry P. Huhner.

[1, 2] It is asked whether the word "children" is to be interpreted strictly or is to be enlarged to "descendants" so as to include grandchildren. The primary guide in the interpretation of any will is the manifest intention of the testator, and it is the duty of the court to give that force and effect to the scheme of distribution devised by the testator for the disposition of his property among the objects of his bounty where a construction and interpretation of the will to that effect is not inconsistent with or does not contravene or render nugatory statutes or decisions. This canon of construction of wills is so fixedly determined that it needs no citation for its support. The testator left no widow or children; his nearest relatives being brothers and sisters and nephews and nieces. The scheme of distribution adopted by him was to divide his property into two equal parts, and the legatees into two great categories; one comprehending his blood relatives, and the other his relatives by affinity. One of these parts he divided amongst his brothers and sisters and children of deceased brothers and sisters. The other part he divided between the brothers and sisters of his deceased wife, or the children of her deceased brothers and sisters. He gave a legacy of $1,000 to his sister and a legacy of $1,000 to Julia Braun, his wife's sister. The intent discoverable from the will seems plainly to direct a distribution of his property equally and absolutely between his own blood relatives and his deceased wife's relatives; the shares or parts of the one-half distributed among his wife's relatives to be independent and kept separate from the shares or parts of the one-half distributed among his own blood relatives. If the word "children" were interpreted in its primary sense, two legacies of a one-sixth share must lapse—the one to Barbara Glock and the one to the children of Mary Huhner, they leaving no children them surviving, but only grandchildren. The intention of the testator was to die testate as to all his property, and this is evidenced by the absence of any residuary clause in the will, and the law favors testacy rather than intestacy.

From the whole scheme of distribution set forth in the will, I am of the opinion that the testator in using the word "children," with regard to the shares distributed by the eleventh paragraph of the will, intended it (where there are no children) in the sense of "descendants," so as to include grandchildren, and thus keep the one-sixth share among the representatives of the legatee entitled to the share had she survived. Grandchildren may be included in the word "children"

whenever it is necessary to give effect to the words of a will, and it appears to have been the intent of the testator, as I think it was in this case. Marsh v. Hague, 1 Edw. Ch. 174; Hone v. Van Schaick, 3 N. Y. 538; Matter of Bender, 44 Misc. Rep. 79, 89 N. Y. Supp. 731.

[3] The legacies contained in the third, fourth, and fifth subdivisions of paragraph 11 reading "one equal sixth part or share to the children of * * *" are unmistakably gifts to a class (Matter of Kimberly, 150 N. Y. 90, 44 N. E. 945; Matter of King, 200 N. Y. 189, 93 N. E. 484, 34 L. R. A. [N. S.] 945, 21 Ann. Cas. 412), and only those of the class who are in being when the final division or distribution is to be made, which by this will is clearly fixed at the death of the life tenant, can share (Matter of Baer, 147 N. Y. 348, 41 N. E. 702; Bisson v. W. S. R. R. Co., 143 N. Y. 125, 38 N. E. 104; Goebel v. Wolf, 113 N. Y. 405, 21 N. E. 388, 10 Am. St. Rep. 464; Teed v. Morton, 60 N. Y. 506.

[4] A more difficult question is presented as to distribution of the one-sixth part given to Barbara Glock in subdivision 1 and of the one-sixth part given to Elizabeth Strauber in subdivision 2 and of the one-sixth part given to Agnes Ey in subdivision 6. It is argued on the authority of Connelly v. O'Brien, 166 N. Y. 406, 60 N. E. 20, that immediately upon the death of the testator the estates in remainder vested in the persons in being at that time, although the enjoyment was postponed until the death of the life tenant, and that therefore the shares of those surviving the testator, but predeceasing the life tenant, passed to their representatives. The will in the case of Connelly v. O'Brien, supra, was as follows:

"I give all my estate, real and personal, after the payment of my debts, to my wife Rose during her life and then to such of my children as may then be alive, share and share alike."

The court held that the word "then" denoted the time when both estates were to vest and referred to the death of the testator and not to that of the life tenant. In deciding this case the court followed the intention of the testator, holding that by the language employed in the will it manifestly was intended to give a life estate to his widow with a remainder to his children, postponing the enjoyment but not the vesting of the remainders until the termination of the life estate. The will in this case is not the same. It provides that:

"After the death of my sister-in-law, Julia Braun, * * * to pay one equal part or share to the following of her sisters, if living, or the children of such as shall be dead."

Thus, in clear and unmistakable language, the testator fixes the time of division and distribution as of the date of the death of the life tenant. The gift is contingent upon survivorship. No other construction than that of survivorship over the life tenant would follow the plain language employed by the testator. If the legacy vests at all before the date of distribution, it is a defeasible interest to be divested by death before that time of the person presumptively entitled to share in the distribution. Matter of Baer, supra. Each will must stand upon

its own language and in this case "futurity is annexed to the substance of the gift." Therefore only those persons surviving the life tenant are entitled to share.

Decreed accordingly.