In the Matter of the Estate of MARY DUFFY, Deceased.

Surrogate's Court, Kings County, April 15, 1932.

*Corner, Bell, Russell & McNulty* [*Richard P. Charles* of counsel], for the petitioner.

*George V. Grainger*, for William Mann, respondent.

WINGATE, S. This testatrix died on April 5, 1930, leaving a will executed August 26, 1918, which was duly admitted to probate in this court. At the time it was executed she had two sons, who were self-supporting, and two married daughters living with her.

The document, after directing payment of debts, etc., read in part as follows:

" *Second.* I give, devise and bequeath my two houses in Brooklyn, New York City, known as No. 10 Hicks Street and No. 3 McKinney Street, to my four children, Joseph Woods, Mary Lamm, Irene Gilroy and Raymond Woods, share and share alike. In case any of these four children predecease me then the share of that one shall go to the lawful issue of that one share and share alike, and in case the child or children dying before me shall leave no lawful issue then the share of the one so dying shall go to the survivors share and share alike.

" *Third.* I give, devise and bequeath my house in Brooklyn, New York City, known as No. 597 Eleventh Street, to my two daughters Mary Lamm and Irene Gilroy share and share alike, or to the survivor of them. All the furniture, fittings, household effects and all personal property, including personal effects and jewelry and cash, belonging to me at the time of my demise and in the property 597 Eleventh Street are included in this bequest to my said two daughters."

It then appointed the daughters executrices without bond, and gave them power of sale over all real property. The final paragraph recited reasons for the disinheritance of testatrix's husband.

Aside from these facts, the only testimony introduced at the hearing, pertinent to the question of construction, is that the will was drawn by an attorney who had been admitted to practice for about six years at the time the document was executed.

The question submitted is as to whether the gift to testatrix's two daughters in the third item vested ownership of the Eleventh street property in them as tenants in common, or as joint tenants.

It is familiar law that by reason of the provisions of section 66 of the Real Property Law, a gift to two or more individuals is presumed to vest the subject-matter in them as tenants in common and not as joint tenants. (*Overheiser* v. *Lackey*, 207 N. Y. 229, 233; *Matter of McCafferty*, 142 Misc. 371, 381, and cases cited.) The burden of proof in this case, therefore, is on the executrix who contends for the latter construction.

It is primary that under ordinary circumstances, a will speaks from the date of death of the testator (*Matter of Shevlin*, 143 Misc. 213), and that words of survivorship will be construed as referring to the death of the testator, unless such construction is incompatible with other provisions thereof. (*Nelson* v. *Russell*, 135 N. Y. 137, 141; *Matter of Woodruff*, 135 Misc. 203, 207.)

As the third item is phrased, therefore, the natural construction by reason of the prefixing of the word " or " to the gift to the survivor of the two daughters would be that such survivorship refers to continued life beyond that of the testatrix and not to survivorship of either devisee over the other.

In an attempt to overcome this natural construction, the executrix calls attention to the rule which has sometimes been applied, that the word " or " may be read " and," citing as authority *Jackson* v. *Blanshan* (6 Johns. 54, decided in 1810). Why this particular case was selected as the sole authority on this point is obscure, since its facts are anything but apposite to those of the case at bar, and there are several more recent authorities to similar effect. However, all of these precedents are to be read in the light of the

equally fundamental principle which is stated with peculiar aptness in *Armstrong* v. *Moran* (1 Bradf. Sur. 314, at p. 315): " It is said, however, that ' and ' may be read ' or,' and the words ' and their heirs,' be changed into ' or their heirs.' But ' and ' is never read ' or,' unless the context of the will favors it, and the general intention is thereby elucidated or promoted. These words are certainly not ordinarily convertible, and to change one into the other at will, to suit the mood of the reader, would work wondrous mischief with legal instruments, to say nothing of its singular effects upon the meaning of any English author one may chance to take down from the shelf."

A somewhat similar thought is expressed in *O'Brien* v. *Heeney* (2 Edw. Ch. 242, at p. 248): " In order to give the devise the latter meaning, the phrase must be changed from the disjunctive to the conjunctive. This is sometimes done where the whole sentence in a will would be otherwise uncertain or unintelligible, and it is evident *or* is used for *and*, and *vice versa* through mistake; and upon the principle of correcting the mistake and of effectuating the intention and giving validity to the bequest, the court interposes to change the word: still, unless it is clearly authorized by the intention and meaning of the testator, as collected from the whole will, no alteration will be made. 2 Roper on Legacies, 290.

" In the case of the will under consideration, I am satisfied no alteration or change is called for. As the words stand, they are susceptible of a fair legal construction." (See, also, *Matter of Barrett*, 141 Misc. 637, 640, and other cases too numerous to mention.)

The executrix argues that the testamentary scheme shown by the will of the testatrix is such as to overcome the presumption against joint tenancy, and calls attention to the phraseology in the second item, effecting a gift of the real property therein devised to those of her four children living at her death or the issue of such as have died, as reinforcing her contention.

The court is unable to see the force of this argument. The purpose envisaged in the second item differs in one respect from that shown in the third, in that it is testatrix's direction in the former that the children of any deceased child should take the parent's share in the event of the decease of such parent prior to the death of the testatrix, which conditional gift over is omitted in the latter. With this exception, both directions contemplate an identical manner of disposition of the respective subject-matters to the named recipients. The phraseology used in the second item is, under the differing circumstances therein contemplated, neither more nor less apt for the conferring of tenancy in common than that employed in the third. Nothing has been shown in the circum-

stances surrounding the testatrix at the execution of the document which would incline any unbiased person to the belief that testatrix had any different intention respecting the manner of the gift in the two items.

The executrix has also laid considerable stress on the fact that the testamentary instrument was drawn by an experienced attorney. This, however, is a double-edged weapon. In the construction of a will drawn by an attorney, it is customary to invoke a somewhat stricter rule respecting the language employed than where its authorship is potentially that of a layman (*Matter of Leonard*, 143 Misc. 172), and it is scarcely to be presumed in the face of such a rule that this experienced attorney would, as he has done, use the ordinary proper phraseology for creating a tenancy in common in the third item, if his client wished to create a joint tenancy. This is particularly obvious in a case like the present since an experienced attorney, if employed to create a joint tenancy, would know, in view of his presumed acquaintance with the provisions of section 66 of the Real Property Law, that he would not give effect to the intention of his client unless such desire were expressed in unmistakable language.

The rule here applicable has been frequently enunciated and is that " when the language of a will is clear and definite it must be interpreted in its ordinary meaning and the testator must be deemed to mean what he says." (*Meeker* v. *Draffen*, 137 App. Div. 537, 540; affd., 201 N. Y. 205.) (See, also, *Matter of White*, 219 App. Div. 502, 504; affd., 245 N. Y. 587; *Nolan* v. *Nolan*, 169 App. Div. 372, 374.)

A final consideration of importance in this connection is the familiar basic canon of construction that the law favors the vesting of estates. (*Matter of Rossiter*, 134 Misc. 837, 840; affd., 229 App. Div. 730; affd., 254 N. Y. 583; *Matter of Leonard*, 143 Misc. 172; *Matter of Soy*, Id. 217.) The effect of a determination that the gifts in the third item amounted to a joint tenancy would be substantially equivalent to a holding that if both daughters survived the testatrix, each would have a life estate in the property given, with a contingent remainder in the whole. The resulting unfortunate effect of such a tenancy, of disabling either to dispose of her interest at anywhere near its true value without the consent of the other, was undoubtedly one of the motivating considerations leading to the enactment of section 66 of the Real Property Law and its predecessor statutes. It is obvious that testatrix's intention respecting the quality of the ownership of the real property was identical with that contemplated respecting the personal property, jewelry and cash which were included in the

item, but a joint tenancy in such items of personal property would be little short of incongruous.

The court, therefore, determines that the intention of the testatrix was to vest the title to the specified real and personal property mentioned in the third item in her two named daughters as tenants in common provided they survived her, which they did. It follows as a logical conclusion that the portion of the property belonging to either would pass to her distributees on her death subsequent to that of the testatrix.

Proceed accordingly.