In the Matter of the Estate of JOHN P. COSTELLO, Deceased.

Surrogate's Court, Broome County, May 12, 1933.

*John E. Costello* and *John H. Mangan*, as administrators with the will annexed of the estate of John P. Costello, deceased, in person, and by *John H. Mangan*, their attorney.

*Elizabeth Callahan, James F. Maloney, John Maloney, Jr., Mary Weir, Ella Callahan, Anna Vaccaralli, Thomas Maloney*, distributees of said testator, John P. Costello, deceased, appearing in person.

BAKER, S.   This is a proceeding for the construction of the last will and testament of the above-named decedent.

A proceeding for the construction of a will really involves two separate and distinct processes, which for want of better terminology, may be designated, as, *first*, the function of interpretation of the document; and, *second*, that of adjudication of its legal effect.   The former act involves merely a decision as to what the testator intended by the use of the language employed in the instrument.   This must be resolved by an analysis of the particular words employed therein (*Matter of Halbert*, 141 Misc. 181, 182; *Matter of Kirkman*, 134 id. 527, 528; *Matter of Kelly*, Id. 399, 401; *Matter of Weissmann*, 137 id. 113, 114; affd., 232 App. Div. 698; *Matter of Tuozzolo*, 141 Misc. 251, 252, 253; *Matter of Shumway*, 138 id. 429, 434; *Matter of Ryan*, 136 id. 261, 264; *Matter of Durand*, 250 N. Y. 45, 54)

when read in the light of the pertinent surrounding circumstances at the time the document was executed. (*Matter of Smith*, 254 N. Y. 283, 289; *Matter of Patterson*, 139 Misc. 872, 875; *Matter of Shumway*, 138 id. 429, 432.) Only when testator's intention has been ascertained is the stage set for the second act in the construction process, namely, that of adjudication, which consists of the application of recognized rules of law to the dispositive directions, and involves a decision as to how far applicable legal principles will permit effectuation of the devolution desired and expressly or impliedly directed by him.

This distinction of functions has received occasional judicial recognition and is stated with especial aptness in *Herzog* v. *Title Guarantee & Trust Co.* (177 N. Y. 86, at p. 91): " From them [the testamentary instruments] the intention of the testator must be ascertained. The intent to be discovered is not whether he intended to make a valid disposition of his estate, but what provisions he in fact intended to make. When that is found, it is for the court to determine whether such intended provisions are valid or otherwise. (*Colton* v. *Fox*, 67 N. Y. 348, 351.) "

At page 92: " The duty of the court is not to make a new will or codicil to carry out some supposed but undisclosed purpose, but to ascertain what the testator actually intended by the language employed by him when properly interpreted, and then to determine whether such intended provisions are valid or otherwise. The duty of the court is to interpret, not to construct; to construe the will and codicil, not to make new ones. (*Tilden* v. *Green*, 130 N. Y. 29, 51.) "

In the performance of the office of adjudicating the legality of testator's directions for the disposal of his property, precedents are of the utmost importance. On the primary question of what disposition the testator actually intended, in other words, in the judicial act of the interpretation of the meaning of the testamentary instrument, former decisions of the courts have, however, substantially no value as guides, since, as Judge WERNER pertinently remarked in *Matter of King* (200 N. Y. 189, 192): " No will has a twin brother." No two wills are similarly phrased in all particulars, and since every word employed is potentially important as shedding possible light upon what the testator actually had in mind at the time of the execution of the document (*Matter of Gorra*, 135 Misc. 93, 97; *Matter of Gargiulo*, 138 id. 90, 97; *Matter of Sheffer*, 139 id. 519, 520), it is fundamentally inconceivable that a decision respecting intent, as disclosed in one instrument, could have any proximate bearing on the purpose envisaged in another.

On questions of interpretation the sole aim of the court is to

decide what the testator desired. In the act of adjudication this is entirely immaterial, legal rules alone governing the determination.

Another frequently encountered stumbling block in this connection is concealed in the phrase " the intention of the testator." This does not refer to what he might have desired to accomplish in the light of the eventualities which have transpired since the execution of the will. The only intent relevant or important is as to the disposition of his property which the testator had in mind at the precise moment of his signature of the will which is the subject-matter of the construction. Since no one is endowed with prophetic vision it must be obvious that subsequently transpiring events can throw no light whatsoever upon this inquiry and this point has frequently and many times been stressed.

In *Morris* v. *Sickly* (133 N. Y. 456) the Court of Appeals says (at p. 459): " Clearly, circumstances occurring long after the execution of a will could not have been within the contemplation of the testator, and could, therefore, throw no light upon the meaning of language which he then used. While a will is in some sense ambulatory as to the objects and subjects with which it deals, yet it is not ambulatory as to the meaning of the language used by the testator and the intention and purpose which controlled the disposition of his property. That intention and purpose must be found to exist at the time of the execution of the will, and cannot be varied or changed by any after-occurring events."

The decision of the court in questions of interpretation, therefore, is based solely on two facts, namely, the testamentary language used and the circumstances surrounding the use at the time it was employed. As in other cases, inferences may and usually must be drawn by the court from these demonstrated facts, and these, as in other cases, are founded upon probabilities, based on human experience.

With these introductory observations the testamentary document at bar will be summarized. In the first item testator directed payment of his debts and funeral expenses, continuing as follows: " I give, devise and bequeath to my brother, Patrick F. Costello and my sister, Mary Costello Walsh, as joint tenants, the premises now owned by me, situate on the west side of Oak Street, in the City of Binghamton, New York, and being known as 175 Oak Street, being the premises formerly owned by my father, and I hereby give and bequeath to my said wife, Nellie W. Costello, the use of the first floor of said premises for the term of one year after my decease without rent, she, however to pay one-half of the taxes levied against said premises during said term, the other one-half to be paid by my sister and brother above mentioned.

*"Second.* All the rest, residue and remainder of my estate, both real and personal, and wheresoever situate, I give, devise and bequeath to my wife, Nellie W. Costello, to be hers absolutely and forever.

" This bequest to my said wife is in lieu of all and every claim for dower which she might have in the real estate above mentioned.

" I hereby direct that my said executors hereinafter named shall not be required to give a bond or bonds for the faithful discharge of their duties as such."

In the last item he appointed as executrix and executor, respectively, his wife, Nellie W. Costello and his brother, Patrick F. Costello, and revoked all former wills.

At the time the will was drawn, testator had a wife, one brother and one sister, they being the indiv duals who were mentioned by name in its first, second and last items. Testator at the date of the will and at the time of his death, also had seven nieces and nephews of the half blood, who were not mentioned in any manner in his will. Testator died April 14, 1932.

Patrick F. Costello, the brother of testator, died January 23, 1931, leaving as his sole distributee one son, John E. Costello, one of the petitioners in this proceeding.

Mary Costello Walsh, the sister of testator, died June 15, 1931, leaving no children or descendants her surviving.

Nellie W. Costello, the wife of testator, died September 3, 1931.

Testator was adjudged insane and duly committed to the Binghamton State Hospital on April 3, 1931. From the time of his commitment to the date of his death he was an inmate of said institution, and a committee of his person and property transacted all of his affairs during that time

As stated before, the first consideration for the court is the function of interpretation of the document.

In the instant case the will was drawn by a competent lawyer and the devise in the first item of same to testator's brother, Patrick F. Costello, and sister, Mary Costello Walsh, as joint tenants shows a clear intent by testator that those individuals, or the survivor of them, should take the real property mentioned therein, and together own but one estate, according to a theory which, rigidly applied, would recognize no distinct interest in one to pass on his and/or her death to his and/or her distributees or devisees, his and/or her claim being, as against the other, merely extinguished in that case. It was not the wish of testator that, in the event of the death of either of said individuals, his and/or her distributees or devisees should be substituted in the place of the one so dying, so as to take a share or portion of such devise.

If such were his intention, he could very easily have executed another will after the death of his brother, Patrick F. Costello, on January 23, 1931, and before his (testator's) commitment to the Binghamton State Hospital on April 3, 1931.

John E. Costello, the sole distributee of said Patrick F. Costello, deceased, and one of the petitioners in this proceeding, asks the court to find as a fact and conclusion that testator intended to leave the real property mentioned in the first item of his will to his brother and sister and their descendants german, and to the exclusion of his nieces and nephews of the half blood. In this connection, certain rules appertaining to the admissibility of evidence to explain a will should be quoted.

" Extraneous and parol evidence is admissible to explain a will when there is a latent ambiguity arising dehors the instrument, but never to supply, contradict, enlarge or vary the written words." (*Brown* v. *Quintard*, 177 N. Y. 75; *Union Trust Co.* v. *Boardman*, 215 App. Div. 73; affd., 246 N. Y. 627; *Matter of Chambers*, 112 Misc. 551, 556; affd., 196 App. Div. 934; *Arthur* v. *Arthur*, 10 Barb. 9, 16.) " The instrument itself is unambiguous and on basic principles of construction the only testimony admissible, is such as is necessary to inform the court of the situation of the testatrix at the time the document was executed." (*Matter of Schrier*, 145 Misc. 593, 595.)

The second query, that of adjudication of the legal effect of the document, particularly the devise in the first item of same, presents a more novel and difficult question.

Section 66 of the Real Property Law provides: " Every estate granted or devised to two or more persons in their own right shall be a tenancy in common, unless expressly declared to be in joint tenancy; but every estate, vested in executors or trustees as such, shall be held by them in joint tenancy. This section shall apply as well to estates already created or vested as to estates hereafter granted or devised."

The leading characteristic of joint tenancy is the fact that, on the death of one joint tenant, the other joint tenant or tenants who may survive him, if it is an estate of inheritance, have the whole estate. Thus, if there are three joint tenants, on the death of one the two survivors have the whole, and, on the death of one of these survivors, the last survivor has the whole, and, on the death of this last survivor, the whole passes to his heirs, or to his personal representatives, if it is a leasehold estate. (Tiffany Real Prop. [2d ed.] 627.)

Somewhat analogous to the doctrine of survivorship, and like it based on the theoretical nature of a joint tenancy, is the rule that

in the case of a devise to two or more persons, in such form or under such circumstances as otherwise to make them joint tenants, if it is ineffective as to one by reason of his death or incapacity to take, or for some other reason, the devise is effective in favor of the other person or persons, as to the entire subject of the gift, they taking the whole. (Tiffany Real Prop. [2d ed.] 629.)

A devise to joint tenants does not lapse, unless all of them predecease the testator. (Weed Practical Real Estate Law [2d ed.], 1062; Jarm. Wills, 341; Schouler Wills [5th ed.], § 566.)

As Chief Judge COMSTOCK stated in *Downing* v. *Marshall* (23 N. Y. 366, 370): " Testamentary gifts are liable to failure in consequence of the ambulatory nature of wills which cannot take effect in favor of persons who die before the testator, because until then such instruments can have no effect at all. The principle of the lapse is the same as that which defeats the operation of a deed in favor of a person who is dead at the time of its execution. And whether the instrument be a will or a deed, if the ancestor be dead, the heir cannot take in succession to him. This rule has been changed by our statute in the case where the devise or bequest is to a child or descendant of the testator, who dies in his lifetime, leaving a descendant who survives the testator. In such a case the estate or interest given vests in the descendant of the legatee or devisee. (2 R. S. p. 66, Sec. 52.)" And as stated in *Morris* v. *Sickly (supra)*, " a will is in some sense ambulatory as to the objects and subjects with which it deals," my conclusion is, in the instant case, that upon the decease of Patrick F. Costello the devise to him and his sister as joint tenants immediately passed to the sister, Mary Costello Walsh, as survivor, she being entitled to the entire devise, by operation of law, her estate, however, being predicated upon her surviving the testator.

To hold that John E. Costello is entitled to the fee of the real property devised in item first of this will, it would be necessary for the court to decide as a matter of law, and in fact construct a new will for testator, that upon the death of Mary Costello Walsh, the survivor of the jo nt tenancy, the devise therein returned to Patrick F. Costello (who was then deceased), and from him passed on to his distributees. Such a conclusion would be contrary to all rules of law and statutory construction.

Neither can it be held that John E. Costello takes by representation through the operation of section 29 of the Decedent Estate Law (as amd. by Laws of 1912, chap. 384), for the reason that by the devise to Patrick F. Costello and Mary Costello Walsh, the said Patrick F. Costello took no estate either as a fractional part or whole thereof, within the purview of said section, but instead took

an estate jointly with Mary Costello Walsh, which on the death of Patrick F. Costello would not pass to his distributees, according to the construction of this statute.

Question has also been raised as to the right of the nieces and nephews of the half blood herein to take any sha e of the real property ment oned in the first item of this will, due to the fact that former section 90 of the Decedent Estate Law provided that " relatives of the half-blood and their descendants shall inherit equally with those of the whole blood and their descendants, in the same degree, unless the inheritance came to the intestate by descent, devise or gift from an ancestor; in which case all those who are not of the blood of such ancestor shall be excluded from such inheritance," and although it appearing that the real property herein did come to testator from an ancestor who was not of the blood of said nephews and nieces, my conclusion in this respect is that former section 90 (supra) was abolished by section 81 of the Decedent Estate Law, as added by chapter 229 of the Laws of 1929.

I hold and determine that the devise to Patrick F. Costello and Mary Costello Walsh in the first item of the will of John P. Costello, deceased, lapsed, and that the real property in question becomes a part of the residuary estate of said testator.

I further hold and determine that due to the fact that Nellie W. Costello, the wife of said testator, and the sole residuary legatee and devisee under his will, predeceased him, the residuary clause of the will becomes inoperative and said testator died intestate as to the real property devised in the first item of his will.

As to the personal property bequeathed to Nellie W. Costello under the residuary clause of the will, there is also a lapse, with the result that the testator died intestate as to such personal property.

In view of the conclusion reached by me, I further hold and determine that the entire estate, real and personal, left by testator should be divided equally, share and share alike, among John E. Costello, a nephew german; Elizabeth Callahan, James F. Maloney, John Maloney, Jr., Mary Weir, Ella Callahan, Anna Vaccaralli and Thomas Maloney, nieces and nephews of the half blood. (Dec. Est. Law, § 83, subd. 8.)

Submit decree on five days' notice construing the will accordingly.