In the Matter of the Estate of CHARLES B. RICHARDS, Deceased.

Surrogate's Court, Broome County, January 12, 1934.

*Edwin H. Moody*, for the substituted trustee.

*Herbert H. Ray*, for Albert B. Wilson and others.

*Yager, Bebout & Stecher*, for Harry Richards and others.

*Louis Z. Green*, special guardian of Clarissa Barker, an incompetent person.

*Walter T. Couper*, special guardian of certain absentees and unknown parties.

BAKER, S. This is an application for construction of certain portions of the will of Charles B. Richards, deceased, made in connection with a petition for the judicial settlement of the accounts of the City National Bank of Binghamton as substituted trustee.

The office of the court in any proceeding for testamentary construction is twofold, as was pointed out in *Matter of Costello* (147 Misc. 629). It is a trite truism that the primary object in the construction of a will is to ascertain the intention of testator, and when this has been determined the court must adjudicate the legal effect and consequences of the directions as there interpreted. The testator, not the court, must make a disposition of his property. All the latter can do is, so far as legal rules permit, to effectuate the disposition which the testator has directed. It cannot make a new and valid will for him if he has failed in this respect, nor can it exercise its own judgment as to the justness or fairness of the provisions of the instrument. (*Herzog* v. *Title Guaranty & Trust Co.*, 177 N. Y. 86, 92; *Central Trust Co.* v. *Egleston*, 185 id. 23, 33; *Weeks* v. *Cornwell*, 104 id. 325; *Tilden* v. *Green*, 130 id. 29; *Riker* v. *Gwynne*, 201 id. 143.)

In the performance of the office of adjudicating the legality of testator's directions for the disposal of his property, precedents are of the utmost importance. On the primary question of what disposition the testator actually intended, in other words, in the judicial act of the interpretation of the meaning of the phraseology used in the testamentary instrument, the citation of authorities is of very little use. No two wills are similarly phrased in all par-

ticulars, and since every word employed is potentially important as shedding possible light upon what the testator actually had in mind at the time of. the execution of the document, it is fundamentally inconceivable that a decision respecting intent, as disclosed in one instrument, could have any proximate bearing on the purpose envisaged in another.

Another frequently encountered stumbling block in this connection is concealed in the phrase " the intention of the testator." This does not refer to what he might have desired to accomplish in the light of the eventualities which have transpired since the execution of the will. The only intent relevant or important is as to the disposition of his property, which the testator had in mind at the precise moment of his signature of the will which is the subject-matter of the construction.

In *Morris* v. *Sickly* (133 N. Y. 456) the Court of Appeals says (at p. 459): " Clearly, circumstances occurring long after the execution of a will could not have been within the contemplation of the testator, and could, therefore, throw no light upon the meaning of language which he then used. While a will is in some sense ambulatory as to the objects and subjects with which it deals, yet it is not ambulatory as to the meaning of the language used by the testator and the intention and purpose which controlled the disposition of his property. That intention and purpose must be found to exist at the time of the execution of the will, and cannot be varied or changed by any after-occurring events."

It was pointed out by the Court of Appeals (*Matter of Bump*, 234 N. Y. 60, 63) that little light is cast on the correct interpretation of the language in one will by decisions construing another. (*Matter of Quinby*, 134 Misc. 296.) In each case resort must, in the final analysis, be had to the familiar primary principles that the aim of the court is to determine the intention of the testator (*Matter of Hughes*, 225 App. Div. 29; *Matter of Phelps*, 133 Misc. 450; *Matter of Purdy*, Id. 217), and if such intention can be discovered it is paramount (*Matter of Buttner*, 243 N. Y. 1; *Matter of Farkouh*, 134 Misc. 285; *Matter of Smathers*, 133 id. 812; *Matter of Manning*, Id. 695), and will not be affected by any rule of construction (*Matter of Rooker*, 248 N. Y. 361); that in determining such intention courts are limited to the words which testator has himself used in the will (*Matter of Durand*, 250 N. Y. 45; *Matter of Dinkel*, 133 Misc. 868); but if there is any ambiguity, that construction should be adopted which will best carry testator's intention into effect. (*Matter of Buechner*, 226 N. Y. 440; *Nicholas* v. *Farmers' Loan & Trust Co.*, 224 App. Div. 540; *Matter of Kavanagh*, 133 Misc. 399; *Matter of Quinby, supra.*)

That there are ambiguities in the language used in the provisions of the paragraphs in dispute of the will at bar is claimed by the respective counsel for the parties who have appeared herein, who argue that different meanings be read from the phraseology employed.

The difficulties encountered in attempting to reach a satisfactory conclusion as to the meaning and effect of the provisions of the paragraphs numbered " sixth " and " eighth," respectively, of the will under consideration, render very appropriate and apt the language of the Court of Appeals in *Keteltas* v. *Keteltas* (72 N. Y. 312, at p. 314): " Upwards of two hundred years ago Lord COKE made the observation, which is nearly as true now as it was then, that ' wills and the construction of them do more perplex a man than any other learning; and, to make a certain construction of them, this *excedit jurisprudentum artem.*'    (*Roberts* v. *Roberts*, 2 Bulst. 130.) Since that time the construction of wills has continued to perplex the courts, and not much has been done by the evolution of rules to aid them.    Such is the multifarious and complexed nature of human affairs, and the uncertainty of language, and such the carelessness, and inattention with which wills will frequently be drawn and executed, that the ' certain construction ' of them will probably be no less difficult in the future than it has been in the past."

Approaching the task of interpretation of the provisions of the paragraphs numbered " sixth " and " eighth," respectively, of the will at bar, and taking seat in testator's arm chair, and which *Boyes* v. *Cook* (L. R. [1880] 14 Ch. Div. 53, cited in *Fell* v. *McCready*, 236 App. Div. 390, 406) enjoins as the proper attitude for the purpose, it is found that the testator's immediate family consisted of himself and wife, he having no children or lineal descendants whatsoever.    His collateral relatives consisted of one brother, a number of nephews and nieces (the whereabouts of several being unknown), and several grandnephews and grandnieces, all being descendants of deceased brothers and sisters.    With this background of facts the paragraphs of the instant will, pertinent in this proceeding for construction, must next be examined.

" *Fifth.* I give, devise and bequeath to my said wife, during the term of her natural life, the use, income and profits of my other real estate herein devised, and as well the use and income of the property hereinafter bequeathed to the Susquehanna Valley Home of Binghamton, N. Y.

" *Sixth.* Upon the death of my said wife, I give and devise to my before-mentioned niece, Jennie R. Lyle, the premises known as Numbers ninety-two, ninety-four and ninety-six Front Street, Binghamton, N. Y., for her own use and benefit forever, but in

case my said niece shall not survive my said wife, I give and devise said property to the children of my brothers and sisters not mentioned in this will and to said Leon Lyle, to be held by them jointly and equally. Intending to refer to my nephews and nieces not herein mentioned by name or otherwise."

" *Eighth.* Upon the decease of my said wife, I give and devise to the children of my said sister Hannah V. Morrow, to be held by them jointly and equally, the premises known as No. 86 Front Street, Binghamton, N. Y."

It will be observed that the testator in and by paragraph " fifth " of his will, gave to his wife a life estate in practically all of his real property. From an examination of the will and codicil it appears that there is no residuary clause in either.

It further appears that the niece, Jennie R. Lyle, survived the testator, but predeceased the life beneficiary. Leon Lyle, the son of said Jennie R. Lyle, predeceased the testator. Testator had no nephews or nieces born subsequent to the date of his will. All of the nephews and nieces referred to in the said " sixth " paragraph of the instant will, who were known to be living at the time of the death of the testator, predeceased the life beneficiary.

For convenience the court will interpret the provisions of the paragraphs of the will in dispute in numerical order.

Under the function of interpretation of the said " sixth " paragraph of this will should be grouped the following propositions for solution:

*First.* Which particular nephews and nieces are intended as devisees, and are descendants of deceased nephews and nieces included as devisees?

*Second.* Is devise to Leon Lyle and nephews and nieces as joint tenants or as tenants in common?

*Third.* Is devise to Leon Lyle and nephews and nieces a gift *nominatim* or as members of a class?

*Fourth.* Nature of estate and time of vesting?

These propositions will be answered in the order given.

It is my opinion from an examination of the entire will of said testator, that his intention in the " sixth " paragraph above quoted, in referring " to the children of my brothers and sisters not mentioned in this will," and particularly by referring " to my nephews and nieces not herein mentioned by name or otherwise," was to devise to all of his nephews and nieces as alternative devisees, those answering to that description who were not provided for, either absolutely or contingently, in any other part or portion of the will. It follows that this result would preclude any nephews or nieces mentioned in any other provision of the will from taking any part

of the property mentioned in the " sixth " paragraph of the will at bar. I am also of the opinion that descendants of deceased nephews and nieces are not included as devisees herein.

In *Cromer* v. *Pinckney* (3 Barb. Ch. 466) the general rule is stated that the testator must be presumed to have used words in their ordinary sense or meaning, and that the words " nephews and nieces," in their primary sense, mean the immediate descendants of the brother or sister of the person named, and do not include grandnephews and grandnieces or more remote descendants. (1 Jessup-Redfield, § 490; *Sanson* v. *Bushnell*, 25 Misc. 268; *Matter of Woodward*, 117 N. Y. 522.)

I believe that the devise in said " sixth " paragraph of the instant will to Leon Lyle, and the nephews and nieces referred to therein, to be held by them *jointly and equally*, is a devise to said Leon Lyle and said nephews and nieces as a group as tenants in common. The will was prepared by a lawyer, and it would seem that if he were employed to create a joint tenancy, he would know, in view of his presumed acquaintance with the provisions of section 66 of the Real Property Law, that he would not give effect to the intention of his client unless such desire were expressed in unmistakable language. (Real Prop. Law, § 66; *Matter of Duffy*, 143 Misc. 421; *Overheiser* v. *Lackey*, 207 N. Y. 229.)

Whether the testator intended that the devise to Leon Lyle and the nephews and nieces mentioned and described in the said " sixth " paragraph of the instant will, was a gift *nominatim* or as members of a class, and his intention as to the nature of their estate and the time of vesting of the same, can, in my opinion, be determined at the same time.

I am of the opinion that the true intent of the testator was that the devise to the nephews and nieces in the " sixth " paragraph of the instant will, was to the class answering that description at the time of his (testator's) death, and not a gift *nominatim* to his nephews and nieces living at the time of the execution of the will. (*Matter of King*, 200 N. Y. 189, 192–198; *Matter of Kimberly*, 150 id. 90, 93; 1 Jarm. Wills [6th Am. ed.], 232; *Matter of Brown*, 154 N. Y. 321; 1 Jarm. Wills [5th Am. ed.,] 269; Schouler Wills & Administration, §§ 529, 530.)

The general rule of testamentary construction is that in the absence of a clear direction to the contrary, the class described by the testator as heirs and next of kin, to whom a remainder interest is given by the will, is to be ascertained as of the time of his death. This construction is not changed by the fact that the life estate may precede the bequest to the heirs at law or next of kin, nor by the circumstance that the bequest to such heirs or next of

kin is contingent on an event that may or may not happen. There must be a clear intention manifested by the will to make a different disposition of the property where the bequest is to heirs at law and next of kin to take it out of the rule that heirs at law and next of kin so described will be determined as referring to those who are such at the time of testator's death. The reason for the rule is said to be that the words cannot be used properly to designate anybody other than those who answer to the description at the time of testator's death. It is said that such a mode of ascertaining the beneficiary implies that the testator has exhausted his specific wishes upon the provisions and limitations and is content thereafter to let the law take its course. The rule has been held to be applicable to an executory devise or a contingent remainder. (*Matter of White*, 213 App. Div. 82, 85.)

Testator's primary and dominant purpose, as appears in his will, was to provide for his wife in a liberal manner by giving her a life use of practically his entire estate. Upon her death, his secondary thought was, that his property mentioned in the said " sixth " paragraph of his will should belong to Jennie R. Lyle. He was a careful man, however, with foresight to appreciate that possibly she might not survive his wife so as to come into possession and enjoyment of this property. Consequently, the provision in the alternative in this paragraph of his will for the benefit of Leon Lyle and of his nephews and nieces who had not been mentioned or provided for otherwise in said will. He was very careful not to provide for the heirs or descendants of any of said nephews and nieces in the event of the death of any of them prior to the decease of the life tenant, and it is but natural to assume that by making no further substitutional provision, he had exhausted his specific wishes as to the possible ultimate disposal of this property when he devised the same to Leon Lyle and the nephews and nieces mentioned and described in said " sixth " paragraph, and in my opinion his intent was apparent that this devise should vest in them as a right, upon his decease. (*Hennessy* v. *Patterson*, 85 N. Y. 91; *McLean* v. *McLean*, 207 id. 365; *Matter of Brown, supra; Matter of White, supra.*)

Testator expressed no direction that the said nephews and nieces should be ascertained at any particular or future time after his decease, and the word " upon " used in the sentence " Upon the death of my said wife " in the beginning of the said " sixth " paragraph of this will, is an adverb of time and simply postpones the possession of the estate. It relates merely to the enjoyment of the estate and not to the vesting of the right in the nephews and nieces mentioned in the said " sixth " paragraph of the instant will.

(*Warner* v. *Durant*, 76 N. Y. 133; *Cammann* v. *Bailey*, 210 id. 19; *Fulton Trust Co.* v. *Phillips*, 218 id. 573; *Matter of Talbot*, 126 Misc. 80; affd., 215 App. Div. 724; *Matter of Banker*, 223 id. 496; affd., 248 N. Y. 596.)

The absence of a residuary clause strengthens the implication that a testator intended to dispose of all of his property by the provisions of the will. (*West* v. *West*, 215 App. Div. 285; *Ward* v. *Stanard*, 82 id. 386; *Matter of Faust*, 83 Misc. 250, 254.)

A construction which results in intestacy should not be favored when a decedent leaves a will, and the presumption is that the decedent intended to dispose of his entire estate. This has frequently been held to be one of the most fundamental rules of construction. (*Clark* v. *Cammann*, 160 N. Y. 315; *Nicholas* v. *Farmers' Loan & Trust Co.*, *supra; Matter of Potter*, 133 Misc. 17; *Matter of Foster*, Id. 222; *Matter of Kavanagh*, *supra; Matter of Manning*, *supra.*)

The vesting of an estate is uniformly favored. (*United States Trust Co.* v. *Taylor*, 193 App. Div. 153, 158; affd., 232 N. Y. 609; *Mersereau* v. *Katz*, 197 App. Div. 895, 898; affd., 233 N. Y. 540; *Foote* v. *Peaslee*, 206 App. Div. 329, 332; affd., 237 N. Y. 586; *Stokes* v. *Weston*, 142 id. 433; *Byrnes* v. *Stilwell*, 103 id. 453; *Livingston* v. *Green*, 52 id. 118.)

I have carefully examined the briefs of counsel who contend that the alternative devise in favor of testator's nephews and nieces did not vest in them in any respect until the death of the life tenant, but I am unable to agree with such theory, as in all of those cases cited the intent of the testator was clear that the estates or gifts were to vest at a definite specified future time, or be divided and paid over at a specified time. The so-called "divide and pay over" rule of construction is merely a canon of construction and is subsidiary to the general intention of the testator as expressed in his will, and is merely invoked as an aid in the ascertaining of such intention. It can have no application to the instant case.

For the reasons and principles resulting in the foregoing interpretation of paragraph "sixth" of the will at bar, and analogous to the provisions of the "eighth" paragraph of this will, my conclusion as to the proper interpretation of said "eighth" paragraph of said will, ascertained from the intention of the testator, is that the children of Hannah V. Morrow, living at the time of the testator's death, took as a class as tenants in common a vested remainder in and to the real property mentioned and described in the said "eighth" paragraph of this will, their possession and enjoyment of same being postponed until the death of the life tenant.

Having ascertained the intention of the testator and the proper

interpretation of the " sixth " and " eighth " paragraphs of the document therefrom, the second function, that of adjudication of the legal effect of the instrument, presents itself for solution.

I hold and determine that the proceeds derived from the sale of the real property mentioned and described in said " sixth " and " eighth " paragraphs, respectively, of the instant will, retain the character of real property, and should be distributed as such to the persons entitled thereto.

It appearing that Leon Lyle, who was mentioned in said " sixth " paragraph of the instant will, predeceased testator, I hold and determine that the devise to said Leon Lyle did not lapse, but that the share which would have been taken by him, had he survived the testator, belongs to the nephews and nieces referred to in said " sixth " paragraph of the will, and who were living at the death of testator. (*Manier* v. *Phelps,* 15 Abb. N. C. 123; 75 A. L. R. 781; 1 Jarm. Wills [5th Am. ed.], 269.)

In application to the paragraphs in dispute of the instant will, certain sections of the Real Property Law are pertinent, and are stated as follows:

" § 35. Estates in possession and expectancy. Estates, as respects the time of their enjoyment, are divided into estates in possession, and estates in expectancy. An estate which entitles the owner to immediate possession of the property, is an estate in possession. An estate, in which the right of possession is postponed to a future time, is an estate in expectancy.

" § 36. Enumeration of estates in expectancy. All expectant estates, except such are are enumerated and defined in this article, have been abolished. Estates in expectancy are divided into,

" 1. Future estates; and

" 2. Reversions.

" § 37. Definition of future estates. A future estate is an estate limited to commence in possession at a future day, either without the intervention of a precedent estate, or on the determination, by lapse of time or otherwise, of a precedent estate created at the same time.

" § 38. Definition of remainder. Where a future estate is dependent on a precedent estate, it may be termed a remainder, and may be created and transferred by that name."

" § 40. When future estates are vested; when contingent. A future estate is either vested or contingent. It is vested, when there is a person in being, who would have an immediate right to the possession of the property, on the determination of all the intermediate or precedent estates. It is contingent while the person

to whom or the event on which it is limited to take effect remains uncertain."

" § 51. Future estates in the alternative. Two or more future estates may be created to take effect in the alternative, so that if the first in order fails to vest, the next in succession shall be substituted for it, and take effect accordingly."

" § 59. Qualities of expectant estates. An expectant estate is descendible, devisable and alienable, in the same manner as an estate in possession."

The above quoted sections of the Real Property Law and the decision of the Court of Appeals in *Hennessy* v. *Patterson* (*supra*); *Matter of Brown* (*supra*), and *McLean* v. *McLean* (*supra*) are applicable to the will at bar, and I hold and determine that under the provisions of paragraph " sixth " of the will of Charles B. Richards, deceased, Jennie R. Lyle took a vested, though defeasible, remainder in said real property, on the death of testator, and the nephews and nieces referred to therein, who were living at the death of the testator, took as a class and as tenants in common, a contingent remainder which vested in them as a right at that time, which right was descendible, devisable and alienable in the same manner as an estate in possession, and this contingent remainder became a vested remainder in said nephews and nieces living at the time of the death of Jennie R. Lyle, and in the devisees of any of said nephews and nieces who had previously died testate, and in the heirs at law of any of said nephews and nieces who had previously died intestate, and finally vesting in said individuals in interest and possession, upon the death of the life tenant. (*Matter of Bump, supra; Matter of Banker, supra; Matter of Brown, supra; McLean* v. *McLean, supra; Ham* v. *Van Orden*, 84 N. Y. 257; *Crooke* v. *County of Kings*, 97 id. 421; *Griffin* v. *Shepard*, 124 id. 70; *Clowe* v. *Seavey*, 208 id. 496; *Matter of White, supra; Clow* v. *Schlieman*, 166 N. Y. Supp. 472.)

It further appearing that all of the nephews and nieces surviving the testator and who took a contingent remainder in the real property devised in the " sixth " paragraph of the instant will, which vested in them as a right upon the death of the testator, are now deceased, I further hold and determine that their respective shares will pass to the devisees under their wills, unless they or any of them died intestate, in which event, their respective shares will descend to their heirs at law. (*Matter of Brown, supra;* 2 Jarm. Wills [6th Am. ed.], 168.)

I further hold and determine that under the provisions of the " eighth " paragraph of the instant will, the children of Hannah V. Morrow, living at the time of testator's death, took as a class, as tenants in common, a vested remainder in and to the real prop-

erty mentioned and described in the said " eighth " paragraph of said will, interest and possession of same being postponed until the death of the life tenant, and that the shares of any of said children who may have died subsequent to the death of testator, will pass either to his or her devisees under his or her will, unless he or she died intestate, in which event, his or her share will descend to his or her heirs at law. (*Matter of Brown, supra;* 2 Jarm. Wills, *supra.*)

Submit decree on five days' notice construing the will accordingly.