In the Matter of the Accounting of FIRST NATIONAL BANK OF BINGHAMTON, as Trustee under the Will of FRED A. WALKER, Deceased.

Surrogate's Court, Broome County, June 17, 1949.

*John M. Keane* for trustee, petitioner.

*Robert M. Schwab* and *Abraham Lublin* for Elizabeth Werthamer, respondent.

*Howard A. Zeller* for Gertie W. Woods, respondent.

PAGE, S. This is a proceeding for the judicial settlement of the account of the above-named trustee in connection with which the petition seeks a construction of paragraph " Ninth " of the will, reading as follows: "Ninth. Upon the death of my said brother, William L. Walker, I give and bequeath all my said estate that may remain, including said trust estate, to said Walter Werthamer and Gertie Werthamer, his wife, and to the survivor of them. I make the above provisions for said Walter Werthamer and Gertie Werthamer, his wife, because of their

friendship to my wife and myself and the assistance they rendered to my wife and myself and the kindness shown to my wife during her illness."

The preceding paragraph "Eighth" of the will created a trust for the benefit of testator's brother, William L. Walker, who is also now deceased. The only residuary assets remaining are those comprising the remainder of this trust.

The testator died August 17, 1927. Walter and Gertie Werthamer both survived him. In 1933, Gertie obtained a Pennsylvania divorce from Walter. She remarried in 1934, her name thereupon becoming and still remaining, Gertie Woods. In 1940, her former husband, Walter Werthamer, also remarried. He died intestate in 1946, predeceasing the life beneficiary of the intervening trust. His sole distributees are his widow, Elizabeth Webb Werthamer, and an adult daughter, Florence E. Wade. His widow was duly appointed administratrix of his estate and, as such, cited herein.

The position of the accounting trustee is that of a stakeholder. As such, it is concerned only with disposing of the remainder of the trust in a manner to be determined pursuant to the adjudicated construction of the above-quoted paragraph "Ninth" of the will.

The contest herein is between Gertrude Woods (formerly Gertrude Werthamer) and Elizabeth Webb Werthamer, as administratrix of the estate of Walter Werthamer, deceased.

On the part of the former, her theory, as presented herein, is that the remainder interest did not vest upon testator's death, and not until the death of testator's brother, William L. Walker; that, Walter Werthamer being then deceased, she is the only person qualified to take and, as such, takes the entire remainder.

On the part of the latter, the theory advanced is that the remainder vested upon testator's death in Walter Werthamer and his then wife, Gertie Werthamer, as tenants in common; that, now, the intervening trust for the benefit of testator's brother being terminated, Walter Werthamer being now deceased and she being the administratrix of his estate, that she is entitled to take possession of his share as an asset of his estate.

A third theory, not appearing to have been considered by either of the opposed parties, is, nevertheless, one of which some determinative disposition must be made. This involves the consideration of whether or not the vesting occurred at testator's death in Walter Werthamer and his then wife, Gertie Werthamer, but not as tenants in common, and, rather, as joint tenants.

The first natural division of the judicial process to be pursued is its interpretative phase. The interpretative phase is identified with the inquiry as to what was the testamentary intent, as manifested by the testamentary provision directly in question, considering its context in the will as a whole and its significance in the light of material surrounding circumstances and conditions.

Courts seldom, if ever, assume to adjudicate unnecessary or academic questions. In the present instance, if the contention of respondent, Gertrude Woods, viz., that vesting did not occur upon testator's death but was deferred until the termination of the intervening trust is well founded, then the ownership of the remainder in question is readily and easily determinable and we need go no further.

Whether or not this contention is sustainable depends, primarily, upon the language found in the paragraph directly in question and its interpretation in relation to all the other provisions of the will and circumstances surrounding the testator when he executed it. The language itself, consisting of words of present gift to beneficiaries *nominatim,* free of any indication to any contrary effect, indicates an immediate gift of a future interest as of the testator's death, the date as of which the previously ambulatory will speaks. Other provisions of the will, including paragraphs " Fifth " and " Seventh " providing other benefits for the same two beneficiaries and the survivor of them, tend to confirm the conclusion that, in line with the principle of the vesting of estates or titles at the earliest date consistently possible (*Riker* v. *Gwynne,* 201 N. Y. 143, 149) that, in this instance, the future interest must be regarded as having vested immediately upon the testator's death. The surrounding circumstances, particularly the fact that the beneficiaries were husband and wife at the time the will was executed and had jointly conferred benefits upon the testator and his wife, tend to corroborate this construction. Circumstances arising subsequent to the execution of the will, the beneficiaries' divorce and their respective remarriages, etc., cannot be taken into consideration, as they could not, he being no clairvoyant, have affected the testator's intent at the time he made his will. (*Morris* v. *Sickly,* 133 N. Y. 456.)

The combined effect of all these considerations is to compel the conclusion that the " when " question in relation to vesting is answered by finding that it occurred upon testator's death, and the " in whom " question, of course, is answered by deter-

mining the vestees to have been Walter Werthamer and Gertie Werthamer, his wife.

But the complete resolution of the construction in the present instance is not as simple as this. A determination that vesting occurred at the testator's death and in whom does not here fully comprehend the necessary ultimate solution. We must go further and are launched upon a combined consideration of the second and third theories above stated. This is true because of the necessity of determining the " how " of the vesting, whether as tenants in common or jointly.

The only difficult and troublesome issue here presented is as to this question as to the quality of the vesting. We are still in the interpretative phase of the present construction in examining the situation as to the testator's purpose or plan as to which one of the two possible forms of vesting he intended. If we were to conclude that he did not definitely intend either one, the vesting would be as a tenancy in common. Even if he intended a joint tenancy, his intention would be abortive unless expressed with unquestionable certainty and the construction would still be a tenancy in common.

Remembering that the beneficiaries were, at the date of the will's execution, husband and wife, apparently, maintaining normal relations with each other as such, and had come jointly into the favor of the testator because of their kindnesses to him and his wife, it would be quite natural that the testator might wish to benefit them jointly. Probabilities are frequently determinable in the light of well-known facts concerning human motivations and conduct. It surely is a favored device of husbands and wives, between whom anything like normal conjugal relations exist, to hold, and in nearly all instances, to prefer to hold, real property as tenants by the entirety and bank accounts and other personal property as joint tenants. This well-known fact tends in some degree to accentuate the possible or probable testamentary intent determinable herein.

With these considerations in the background, we have now to consider the main criterion, viz., the words used by the testator, " to said Walter Werthamer and Gertie Werthamer, *his wife, and to the survivor of them.*" These words manifest unmistakably an intent to make the gift not to the husband, not to the wife, but to both in the first instance, the ownership and enjoyment to continue, upon the death of either, in the survivor. A close analogy is a conveyance of real property to two grantees who are husband and wife. The intent then conclusively pre-

sumed is that the grant is as tenants by the entirety. (3 Weed, New York Real Property [3d ed.], p. 1653; *Lerbs* v. *Lerbs,* 71 Misc. 51.) If the " and " had been an " or ", this might provide some foothold of reasoning to the effect that the intent was no more than to provide against the possible death of either one or the other of the two beneficiaries during the lifetime of the testator. Likewise, where a testator says, " in the event of the death of A (the primary beneficiary) I bequeath this legacy to B ", or words of any such form, the intent is construed as referring to testator's own death and designed to provide against the possibility that the primary beneficiary might predecease him. (*Kelly* v. *Kelly,* 61 N. Y. 47.) A devise to joint tenants (and the same is true of a legacy) does not lapse, unless both, or all, as the case may be, of them predecease the testator. (See 1 Jarman on Wills [5th Amer. ed.], p. 340; Shouler on Wills and Administration [1910 ed.], § 566, and authorities there cited.) But such is not this case, and unlike some other cases, there is here no basis in reason for changing or transposing words, rated as a desperate remedy in any event, and employable only as a last resort, where, because of confusing ambiguity, sense cannot be otherwise developed. Beyond any reasonable doubt, the testator *intended* that the vesting, whenever it might occur, i.e., entirely regardless of the date of his own demise, should be joint. Thus endeth the interpretative phase.

In the present case, the adjudicative phase of the will's construction is not free of difficulty. In numerous instances, a testator's intent and purpose may be ever so plain, but yet ineffective because of statutorily prescribed limitations and conditions, qualifying or limiting the testamentary privilege accorded by the State. These include: (1) qualifications of a person to become a testator; (2) formalities to be observed, and (3) limitations, such as the so-called rules against " perpetuities " (Personal Property Law, § 11, and Real Property Law, § 42) and a number of others. (See 3 Butler on New York Surrogate Law and Practice, §§ 2201–2236, for a comprehensive exposition of six of the most important of these various restrictive provisions and principles of the last-mentioned category.)

Our primary inquiry at this point is whether the testamentary provision here in question runs afoul of any countervailing law of any restrictive species. In the present case, this must be, if anything, section 66 of the Real Property Law, providing: " Every estate granted or devised to two or more persons in

their own right shall be a tenancy in common, unless expressly declared to be in joint tenancy  *   *   *."

Within a decade following the Declaration of Independence, a statute to this effect was enacted in New York (1786) and statutes identical or very similar were adopted not much later in most of the other States. Its design was to reverse the common law's preference of joint tenancies, and thereby facilitate the ownership by two or more persons, particularly in relation to the free alienability of real property. (It has been adjudged to be as applicable to personal as to real property. See *Overheiser* v. *Lackey,* 207 N. Y. 229, 236, and list of other cases cited in McKinney's Real Property Law, § 66, n. 3.) No statute has ever been taken more seriously and more thoroughly effectuated by courts. In every case in which any reasonable doubt appeared, any ambiguity, as between a joint tenancy and tenancy in common, the courts have resolved all such questions in favor of the latter form of ownership.

This line of cases began with the early case of *Moore* v. *Lyons* (25 Wend. 119 [1840], cited in Shepard a near record number of times). The main issue in that case was as to the "when" of a remainder's vesting as between two dates, the testator's death or death of an intervening life tenant. In determining the former, the court, because of surrounding circumstances, somewhat indicative of intent, and in view of the provision of the statutory predecessor of section 66 of the Real Property Law, also determined the "how" of the vesting to be as a tenancy in common.

Later cases dealing with the application of the statute which is now section 66 of the Real Property Law, and determining tenancies in common against contentions that joint tenancies were indicated, are *Matter of Duffy* (143 Misc. 421); *Overheiser* v. *Lackey* (207 N. Y. 229, *supra*); *Matter of Haddock* (170 App. Div. 26); *Matter of Richards* (150 Misc. 102); *Matter of Baker* (146 Misc. 296).

Some of these cases were characterized by contradictory or repugnant terms in conjunction with "joint" or "jointly". For example, in *Matter of Richards* (*supra*) "jointly and equally"; and in *Matter of Duffy* (*supra*) "share and share alike, or to the survivor of them." In *Matter of Haddock* (*supra*) there was a "bequest" of real property to testator's two sons "to be held jointly if they choose." This line of cases is characterized generally by a lack of the certainty and clarity in designating a technical joint tenancy required by the statute.

The question presented in the present situation is whether the authoritatively warranted conclusion must fall within the purview of precedents favoring tenancies in common, or whether the present issue is so definitely distinguishable from such constructions as are exemplified by this line of cases, which includes many additional to the group last above cited, as to permit a construction implementative of the testator's clearly expressed intent.

Selecting one of these cases which is, at once, of commanding authority and also seems to be as extreme in the direction of a tenancy in common as any that might be found, it would seem to be *Overheiser* v. *Lackey* (*supra*). In this case, the testamentary provision was, "Second. I give and devise to my daughters Eliza Jane Marsh and Hester Marsh, *jointly*," certain real property. The court began its consideration by deriving from the statute that (p. 233): "In order to create a joint tenancy, however, the terms of the grant or devise must *negative the presumption* arising from the statute that it is the *intention* of the testator to create a tenancy in common." (Emphasis supplied.)

Despite the presence of the term "jointly", the court ruled, five to two, that the employment of this term was not, under the unique facts of this particular case, conclusive. This determination appears to have rested most importantly on the inferred fact that the term was inadvisedly injected in the provision by a layman who had, somehow, become cognizant of some legal phraseology but who lacked the ability to use such terminology scientifically and with precision. The court said he appeared to have picked up a "smattering" of legal language, but pointed out various incongruities in testamentary verbiage as employed by him. Further, in this connection, the court (207 N. Y. 229, 235, *supra*) made reference to a Delaware case (construing a statute practically identical with section 66 of Real Property Law) in which it was said:—"the word ' jointly ' does not necessarily mean a joint tenancy, inasmuch as tenants in common or coparceners hold the estate jointly until severance".

The main criterion in the case of *Overheiser* v. *Lackey* (*supra*) was that the court was of the opinion that, in the mind of the testator, or his draftsman, it appeared highly probable that any form of ownership by two or more, including a tenancy in common, would be denominated as "joint", and that, in any grant to plural grantees, they would hold the property conveyed "jointly". This was accentuated by the reasoning implicit in

the particular circumstances of this case tending to indicate that it was not probable that the testator meant to confer the testamentary gift jointly in its paramount technical implication, the survivorship characteristic.

The court (pp. 234–235) expressed agreement with the reasoning stated by the Supreme Court of Illinois in *Mustain* v. *Gardner* (203 Ill. 284) that, under practically the same statute and testamentary provision, the word '' jointly '' did not, '' show clearly and explicitly that the testator intended that the estate devised should *possess the attribute of survivorship.''* (Emphasis supplied.)

In the above-mentioned Illinois case, the entire reasoning of which appears to have been heartily approved in *Overheiser* v. *Lackey* (*supra*), the court construed a statute which provided a tenancy in common would be determined '' unless the premises therein mentioned shall expressly be thereby declared to pass not in tenancy in common, but in joint tenancy.'' Our Court of Appeals further said (pp. 232–233):

'' Similar legislation abrogating the common-law doctrine favorable to joint tenancy has been enacted generally throughout the Union where ' the political policy has been to encourage the distribution of land among the people, to advance which all conveyances to more than one person *except to husband and wife* have been construed to be tenants in common unless another estate is fixed by express and definite words of limitation ' (*Simons* v. *Bollinger,* 154 Ind. 83.) Joint tenancy, originally a favorite of the common law, is now made an object of disfavor in most of the states by statutes requiring the grantor or devisor who wishes to create a joint tenancy to insert words in his deed or devise clearly showing his intent so to do. (Freeman on Cotenancy and Partition [2d ed.], §§ 18, 35.)

'' It was held at an early date, however, in this state that the provision of the Revised Statutes which has been quoted did *not necessarily require* that the words ' joint tenancy ' should be used in a grant or devise to create an estate of that character provided any other expression clearly importing such an intent was employed *(Coster* v. *Lorillard,* 14 Wend. 342; *Purdy* v. *Hayt,* 92 N. Y. 446), and this is the rule in other states where similar statutes exist. In Illinois, for example, where the act concerning conveyances provides that no joint tenancy in any lands shall be held or claimed under any grant or devise unless the premises therein mentioned shall expressly be thereby declared to pass not in tenancy in common but in joint tenancy, it has been held that a declaration in the express words of the statute is not indis-

pensable. (*Mustain* v. *Gardner,* 203 Ill. 284.) ” (Emphasis supplied.)

No valuable purpose would be served in attempting to take a great number of cases following the early precedent of *Moore* v. *Lyons* (*supra*) and endeavoring to distinguish the present case from each and every one in this long line of cases. *Overheiser* v. *Lackey* (*supra*) is as strong as or stronger than any of the others in the direction of according a very comprehensive construction to the provision of section 66 of the Real Property Law. This case was, indeed, so broad in its interpretation of the restriction that an impressively well-reasoned dissenting opinion was written by Judge GRAY, concurred in by Judge CHASE, to the effect that this case should have been decided in favor of a joint tenancy on the basis that if a testator says “ joint ”, he means “ joint ”, and it is not for the court to brush this aside on some inference that he didn't know what he was doing.

A determination of the creation of a tenancy in common in the present case would assume to extend the doctrine of *Overheiser* v. *Lackey* (*supra*) much further than the Court of Appeals indicated it would be willing to go. In other words, the court recognized that the testator still retained the right to create a joint tenancy, provided only he did so by language so clear and unmistakable that there could be no reasonable question as to his purpose. The prevailing opinion also intimated that the situation might be otherwise than there determined in the case of a gift or other conveyance to a husband and wife. Here, among other considerations, we do have an instance of a testamentary benefit sought to be conferred upon a husband and wife, who were at the will's date cohabiting normally, or, at least, there is no evidence otherwise. The language in the present will is written with expertness and precision, undoubtedly by a lawyer thoroughly familiar with legal terms and their accurate usage.

Assuming, as we must, that the will herein subjected to construction was drafted by a scrivener competent in the accurate technical usage of legal terms, the commentary of the Illinois Supreme Court in *Mustain* v. *Gardner* (203 Ill. 284, *supra,* [cited and approved in *Overheiser* v. *Lackey*], *supra*) becomes applicable. There the Illinois Court stated (p. 286) : “ The quality of survivorship is *the distinguishing feature* of a joint tenancy, and where the grant or devise expressly imparts that quality to the estate, as did the deed under consideration in *Slater* v. *Gruger, supra* [165 Ill. 329], it will be deemed effectual to create a joint tenancy, though the negation indicated by the statute be omitted.” (Italics supplied.)

In this respect, quite the opposite to the situation before the court in *Overheiser* v. *Lackey* (*supra*), the testator, by using the language, " to said Walter Werthamer and Gertie Werthamer, his wife, and to the survivor of them ", expressed his purpose and intention so accurately and decisively that, if such expression does not satisfy the requirement of section 66 of the Real Property Law, then this section would practically become operative as the complete abolishment of joint tenancies. This the Legislature obviously did not intend, and this no court has ever held. Joint tenancies are not proscribed. The limitation of the statute upon them is no more than a requirement that designating words in a testament or other documentary instrument must be unmistakable and absolute or the resulting tenancy will be in common, even in a case of probable intent to create a joint tenancy to the contrary notwithstanding.

But a provision for a devolution to two *and* the survivor is as unambiguous, explicit and absolute as the English language will permit. A court of original jurisdiction is not in an ideal position to assume to give greater effect to a statute than that which accords with apparent legislative intent, or, over and beyond the limitations upon its application which have heretofore been evolved and established by courts of appellate jurisdiction. The duty of a probate court is to ascertain and uphold the ascertainable wills of testators insofar as and to the full extent to which they fall short of impugning any restrictive principle or law. Therefore, we are obliged to conclude that the testamentary intent, here expressed, entirely beyond any reasonable question or doubt, provided for the creation of a joint tenancy. The presumption established by the statute was as strongly negatived as it could be. The testator validly expressed his will in this connection.

It is urged that it would be more equitable that a tenancy in common be determined, resulting in separate shares to the two original beneficiaries and their present devolution accordingly. Courts are, or should be, always interested and concerned in working out equitable results. However, in the present case, the basis of the alleged equitable consideration rests entirely upon events in the lives of the two original beneficiaries which transpired several years after the will was executed. (See *Matter of Russell*, 168 N. Y. 169, 177.) Because of this, in striving to attain an ideal of equity such as has been strongly suggested herein, the court would have to disregard all binding authority to the effect that it is only circumstances surrounding a testator when he executes his will, not any that develop subse-

quently, that may be looked to for whatever light they may cast upon his most probable intention in any case where the words themselves are somewhat uncertain or ambiguous. (See *Matter of Richards,* 150 Misc. 102, 104, *supra,* citing *Herzog* v. *Title Guar. & Trust Co.,* 177 N. Y. 86, 92; *Central Trust Co.* v. *Egleston,* 185 N. Y. 23, 33; *Weeks* v. *Cornwell,* 104 N. Y. 325; *Tilden* v. *Green,* 130 N. Y. 29; *Riker* v. *Gwynne,* 201 N. Y. 143, *supra.*) In the present case, we do not even have that foundation. The testamentary words here are unambiguous. A construction based on some such basis as this would rest entirely on the court's speculation and conjecture, as to what the testator would have or might have provided if he could have fully foreseen the future in relation to objects of his bounty. Moreover, it is by no means certain that any such speculation or conjecture would be in accord with what the testator would have provided had he been possessed of prophetic powers. If he were alive and making his will today, he might, and it is fairly probable that he would, choose to confer the benefit on the presently sole survivor of the two beneficiaries of his will here in question. He expressed a reason for making the construed provision which would not now be applicable to anyone but her.

Settle and enter decree accordingly by agreement or upon notice.